LISA COINER, STEPHEN COINER    vs. JOHN A. KING, D.O.

O4-C472

| LINE | DATE | ACTION |
|---|---|---|
| 1 | 12/20/04 | CASE FILED |
| 2 | 01/11/05 | -RET SUMS/WRIGHT/SOS 1-5/RT GRN CRD/BY C LEGG 1-6 |
| 3 | 02/14/05 | -COS/PLFS 1ST SET REQS FOR PROD OF DOCS TO EDWARDS & WRIGHT |
| 4 | 02/14/05 | -COS/PLFS 1ST SET REQS FOR PROD OF DOCS TO EBI |
| 5 | 02/25/05 | -STIPULATION |
| 6 | 03/02/05 | -MCNAIR'S MOT TO DISMISS |
| 7 | 03/07/05 | -COS'S/PLFS 1ST REQ FOR PROD OF DOCS TO MCNAIR/PLFS 1ST REQ FOR |
| 8 | | PROD OF DOCS TO TVHS DBA PGH |
| 9 | 03/28/05 | -RET SUMS/KING/BY SOS 3-3/RET GRN CRD/BY SHIRLEY MELENDEZ/3-8 |
| 10 | 03/31/05 | -MOTION TO DISMISS OF DEFS WRIGHT & EDWARDS |
| 11 | 04/04/05 | -MEM IN SUPPORT OF MCNAIR'S MOT TO DISMISS |
| 12 | 04/05/05 | -OMNIBUS MEM OF LAW IN SUPPORT OF THE MOTIONS TO DISMISS OF DEFS |
| 13 | | WRIGHT & EDWARDS |
| 14 | 04/06/05 | P'S RESPONSE TO MCNAIR'S MOT TO DIS |
| 15 | 04/27/05 | -MAILED NOT & ACK OF REC OF SUMS & COMPLNT TO KING |
| 16 | 05/17/05 | =ACCEPTANCE OF SERVICE/ATTORNEY OFFUTT/1-4-05 |
| 17 | 06/06/05 | -ACPT OF SERV/MCNAIR/BY THOMAS HURNEY/1-17 |
| 18 | 06/06/05 | -RET SUMS/EDWARDS/BY WIFE/1-19 |
| 19 | 06/13/05 | -ACPT OF SRV/HCA,HLTRST,HOSP CORP/BY RICHARD JONES/1-27 |
| 20 | 06/17/05 | -ACPT OF SRV/EBI/BY LUSK/12-29 |
| 21 | 06/16/05 | /AFFIDAVIT OF SERVICE/JOHN KING/DEL TO:MICHAEL TANNER/3-22-05 |
| 22 | 06/21/05 | =AFFIDAVIT OF SERVICE/JOHN KING |
| 23 | 06/24/05 | -MAILED NOT & ACK OF REC OF DUMS & COMPLNT TO KING BY REG MAIL |
| 24 | 06/27/05 | -RET CERT MAIL RC/KING/6-24 |
| 25 | 06/27/05 | -COPY/ORDER OF PUB |
| 26 | 06/30/05 | -ANSWER & CROSS CLM OF TVHS & MOT TO DISMISS |
| 27 | 07/01/05 | :DEF. EBI,L.P.'S ANSWER TO PL COMPLAINT. & CROSCLM OF EBI,L.P. |
| 28 | 07/20/05 | -COS/TVHS 1ST SET REQS FOR PROD OF DOCS & 1ST SET INTR TO PLF |
| 29 | 08/05/05 | -ANSWER OF WRIGHT & EDWARDS TO CROSS CLM OF YVHS |
| 30 | 08/11/05 | -ANSWER OF TVHS TO CROSS CLM OF EBI |
| 31 | 08/23/05 | -ANSWER OF EBI TO CROSS CLM OF TVHS |
| 32 | 09/07/05 | =MCNAIR REPLY TO PLAINTIFF'S RESPONSE TO MCNAIR MOT TO DISMISS |
| 33 | 09/07/05 | :LTR FRM ATT NEVA LUSK DTD 9/1/05 NO OBJECT TO JDG HG. CASE |
| 34 | 09/07/05 | :LTR FRM ATT ROBERTSON DTD 8/3/05 NO OBJECT TO JDG HG. CASE |
| 35 | 09/07/05 | :LTR FRM ATT RICHARD JONES DTD 9/2/05 NO OBJECT TO JDG HG. CASE |
| 36 | 09/07/05 | :LTR FRM ATT OFFUTT, JR. DTD 8/29/05 NO OBJECT TO JDG HG. CASE |
| 37 | 09/07/05 | :LTR FRM ATT HURNEY, JR. DTD 9/1/05 NO OBJECT TO JDG HG. CASE |
| 38 | 09/07/05 | :LTR FRM ATT SCHWIRIAN DTD 8/30/05 NO OBJECT TO JDG HG. CASE |
| 39 | 09/21/05 | .LTR FRM JDG TO CNSL IN RE:HRG 10/21/05 1:30PM JDG ED COURTROOM |
| 40 | 10/03/05 | P'S SUPP RES TO D/DAVID MCNAIRS BRIEFS IN SUPP HIS MOT DISMISS |
| 41 | 10/03/05 | P'S RES TO D/TEAYS VLY HEALTH SERV'S MOT TO DISMISS |
| 42 | 10/05/05 | MOTION TO COMPEL DAVID MCNAIR TO PROD RECORDS |
| 43 | 10/05/05 | CERT OF SERVICE ARDEN J. CURRY II |
| 44 | 10/05/05 | CERT OF SERV ARDEN J. CURRY II |
| 45 | 10/05/05 | MOT TO COMPEL PUTNAM GENERAL HOSP TO PROD REC |
| 46 | 10/05/05 | MOT TO COMPEL WRIGHT MED TECH & ROBERT EDWARDS TO PROD REC |
| 47 | 10/05/05 | CERT OF SERVICE ARDEN J. CURRY II |
| 48 | 11/16/05 | P RESPNS TO D:T.V.HEALTH SERV.1ST INTERR & REQ FOR PROD OF DOC |
| 49 | 11/28/05 | :ANSWER & CROSCLM OF HCA INC. HEALTHTRUST, INC. THE HOSPITAL CO. |
| 50 | | & HOSPITAL CORP. LLC |
| 51 | 11/28/05 | -MOT TO DIS HEALTHTRUST INC,THE HOSP CO & HOSP CORP |
| 52 | 12/14/05 | @ ASW OF DEFENDANT/WRIGHT MED TECH, INC, TO THE CROSS-CLAIM OF |
| 53 | | DEFENDANTS HCA INC, HEALTHTRUST INC, HOSPITAL CO, & HOS. CORP |
| 54 | 12/14/05 | @ ASW OF DEFEND. ROBERT EDWARDS TO CROSS-CLAIM OF DEFEND HCA |
| 55 | | HEALTHTRUST, THE HOSPITAL CO, & HOSPITAL CORP. |
| 56 | 12/29/05 | -PRO SE ANSWER OF JOHN KING |
| 57 | 02/22/06 | -DAVID MCNAIRS ANSWER TO THE PLTF COMPLAINT |

LISA COINER, STEPHEN COINER        vs. JOHN A KING, D.O.

| Line | Date | Action / Results |
|------|------|-----------------|
| 55 | | HEALTHTRUST, THE HOSPITAL CO, & HOSPITAL CORP. |
| 56 | 12/29/05 | -PRO SE ANSWER OF JOHN KING |
| 57 | 02/22/06 | -DAVID MCNAIRS ANSWER TO THE PLTF COMPLAINT |
| 58 | 05/30/06 | -MOTION TO COMPEL JOHN KING TO PRODUCE RECORDS |
| 59 | 06/21/06 | :O/CASE MANAGEMENT PLAN & SCHEDULING ORDER |
| 60 | 08/15/07 | -SUBP W/ SIGNED GREEN CARD TO:WVA PIPE TRADES HEALTH |
| 61 | 08/15/07 | -SUBP W/ SIGNED GREEN CARD TO:MEDICARE |

C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image

## CIVIL CASE INFORMATION STATEMENT
## CIVIL CASES

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

**I..**     CASE STYLE:

**Plaintiff(s)**

Case # 04-C-472

Lisa Coiner, Stephen Coiner, and
Jarrod Coiner, a minor under the age of
18 years, who sues by his father,
Stephen Coiner

Judge: Spaulding

vs.

| | **Defendant(s)** | Days to Answer | Type of Service |
|---|---|---|---|
| 1) | JOHN A. KING, D.O. | | |
| 2) | DAVID McNAIR | | |
| 3) | TEAYS VALLEY HEALTH SERVICES, INC., dba PUTNAM GENERAL HOSPITAL | 30 | Sec. of State |
| 4) | HCA, INC. | 30 | Sec. of State |
| 5) | HEALTHTRUST, INC. – THE HOSPITAL COMPANY, a foreign corporation | 30 | Sec. of State |
| 6) | HOSPITAL CORP LLC | 30 | Sec. of State |
| 7) | WRIGHT MEDICAL TECNOLOGY, INC. | 30 | Sec. of State |
| 8) | ROBERT EDWARDS, aka BOB EDWARDS | 20 | Personal |
| 9) | EBI L.P. | 30 | Sec. of State |

FILED
2004 DEC 20  AM 11:16
DONALD A. WRIGHT, CLERK
PUTNAM CO. CIRCUIT COURT

*Original and 15 copies of Complaint furnished herewith.*

\CVCSFORM3.doc

**II.**    *TYPE OF CASE:*

| TORTS | | OTHER CIVIL |
|---|---|---|
| *Asbestos* | *Adoption* | *Appeal from Magistrate Court* |
| *XXProfessional Malpractice* | *Contract* | *Petition for Modification of Magistrate Sentence* |
| *Personal Injury* | *Real Property* | *Miscellaneous Civil* |
| *Product Liability* | *Mental Health* | *Other* |
| *Other Tort* | *Appeal of Administrative Agency* | |

**III.**    *JURY DEMAND:*        YES **XX**        NO

CASE WILL BE READY FOR TRIAL BY *(MONTH/YEAR)*:    <u>Not known</u>

**IV.**    DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE  SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE?

YES ___      NO ___

IF YES, PLEASE SPECIFY:

**XX**    Wheelchair accessible hearing room and other facilities
____    Interpreter of other auxiliary aid for the learning impaired
____    Reader of other auxiliary aid for the visually impaired
____    Spokesperson or other auxiliary aid for the speech impaired
____    Other:

*Attorney Name:*  <u>Arden J. Curry, II</u>            *Representing:*    (name)

                                    [] *Pro Se*

*Firm: Curry & Tolliver, PLLC*                    [X] *Plaintiff*    [] *Defendant*

*Address:*  <u>P.O. Box 11866, Charleston, WV 25338</u>        [] *Cross-Complaint*

*Telephone:*  <u>(304) 342-6000     State Bar #907</u>        [] *Cross-Defendant*
*Fax: (304) 353-0344    Email: John@pcsv.com*

*Dated:*  December 20, 2004

                *Signature:* _____
                                Arden J. Curry, II

\CVCSFORM3.doc

# CURRY & TOLLIVER, PLLC
## LAWYERS

100 KANAWHA BOULEVARD, WEST
CHARLESTON, WEST VIRGINIA 25302

JACK D. TOLLIVER, M.D., J.D. †
ARDEN J. CURRY
ARDEN J. CURRY, II †
DAVID K. SCHWIRIAN †
SUSAN CURRY BRASSELLE †‡

P.O. BOX 11866
CHARLESTON, WV 25338
TEL: (304) 343-7200
FAX: (304) 353-0350

WRITER'S DIRECT
E-MAIL ADDRESS: JOHN@CURRYTOLLIVER.COM
FAX NUMBER: (304) 353-0344

December 20, 2004

Donald A. Wright, Clerk
Putnam County Circuit Court
Putnam County Courthouse
3389 Winfield Road
Winfield, WV 25213

Re:   Lisa Coiner, et al vs. John A. King, DO, et al
      Medical Malpractice Lawsuit

Dear Mr. Wright:

Enclosed for filing in your office are the following documents: (1) **Civil Case Information Sheet**, (2) **Complaint** with 1**5** copies, (3) **nine (9) original Summons** with 15 copies, and (4) our firm's check made payable to your order in the amount of $260.00 for the required medical malpractice filing fee.

Please file this suit and return all copies of the Complaint with Summons attached to our messenger. We pick up these documents on Wednesday morning, December 23rd.

As always, I appreciate your kind assistance in this matter.

Yours truly,

Arden J. Curry, II

AJC,II/mcs
Enclosures

cc:   Client, w/enc.

† Also Admitted in Kentucky
‡ Also Admitted in Ohio

S:\CN_files\COIN.f12004cor\Ltr10.doc

### IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

**LISA COINER, STEPHEN COINER,**
**and JARROD COINER, a minor under the age**
**of 18 years, who sues by his father,**
**STEPHEN COINER,**

        Plaintiffs,

vs.                        CIVIL ACTION NO. O4 – C- 472

**JOHN A. KING, D.O.; DAVID McNAIR;**
**TEAYS VALLEY HEALTH SERVICES, INC.,**
**d/b/a PUTNAM GENERAL HOSPITAL;**
**HCA, INC.; HEALTHTRUST, INC. –**
**THE HOSPITAL COMPANY, a Foreign**
**Corporation; HOSPITAL CORP, L.L.C.;**
**WRIGHT MEDICAL TECHNOLOGY, INC.,**
**a foreign corporation, ROBERT EDWARDS,**
**aka BOB EDWARDS, and EBI L.P.**

        Defendants.

## C O M P L A I N T

### Preface To Complaint

Pursuant to the provisions of the *West Virginia Medical Professional Liability Act*, W. Va. Code § 55-7B-1 *et seq.*, plaintiff has served, by certified mail, a Notice of Claim against each health care provider named in this Complaint. Accompanying that Notice of Claim were one or more Screening Certificates of Merit as are required under the *West Virginia Medical Professional Liability Act*. No individual, corporation, company or limited partnership upon whom a Notice of Claim and Screening Certificates of Merit were served have requested or demanded pre-suit mediation. More than thirty (30) days has elapsed since service of the Notices of Claim and Screening Certificates of Merit.

## COUNT I
## General Allegations

1.     At all times relevant to the allegations contained in this Complaint, plaintiff was a resident and citizen of the State of West Virginia, who sought medical care from the defendants, John A. King, David McNair and Teays Valley Health.

2.     At all times relevant to the allegations contained in this Complaint, John A. King, DO, [sometimes referred to as "King"] was an osteopathic physician, practicing at Teays Valley Health Services, Inc.'s [sometimes referred to as "Teays Valley"] facility known as Putnam General Hospital [sometimes referred to as "PGH"] in Putnam County, West Virginia.

3.     At all times relevant to the allegations set forth in this Complaint, David McNair [sometimes referred to as "McNair"] was acting in the capacity of a physician assistant or orthopedic physician assistant, and provided care and services to the plaintiff.

4.     At all times relevant to the allegations set forth in this Complaint, Teays Valley was a West Virginia corporation who was the alleged owner of PGH, in Putnam County, West Virginia.

5.     At all times relevant to the allegations set forth in this Complaint, HCA, Inc. [sometimes referred to as "HCA"] owned, operated, controlled, or was the alter ego of Teays Valley.

6.     Healthtrust, Inc. - The Hospital Company [sometimes referred to as "Healthtrust"], is a Delaware corporation, the stock of which is owned 100 percent by HCA, and which was the sole member of Hospital Corp, L.L.C. [sometimes referred to as "Hospital Corp"], which allegedly owned 100 percent of the stock of Teays Valley. HCA owned, operated, controlled or was the alter ego of Healthtrust, a non-operating holding company that had no employees.

7.      Hospital Corp is a foreign limited liability company who allegedly owned 100 percent of the stock of Teays Valley.  HCA owned, operated, controlled or was the alter ego of Hospital Corp, a non-operating holding company who had no employees.

8.      On April 16, 2003, King and McNair performed surgery upon plaintiff Lisa Coiner, which included a lumbar interbody infusion of L5-S1, allograft placement in the form of Allomatrix from Wright Medical, the use of EBI ionic spacer, bilateral decompression of L5-S1, and bilateral foraminotomies of L5-S1 on the plaintiff.  An EBI bone stimulator was further placed, as is reflected in King' office notes.  The operative procedure performed by King and McNair was unnecessary and violated the standard of care.   King's use of an EBI ionic spacer for replacement of a disc and without posterior stabilization was a breach of the standard of care. The use of Allomatrix without autologous bone graft material was a breach of the standard of care.  The placement and use of an EBI bone stimulator was a violation of the standard of care. Performance of destabilizing bilateral laminectomies was a violation of the standard of care.

9.      At all times relevant to the allegations set forth in this Complaint, McNair was employed by Teays Valley and was acting within the scope of his employment duties.  As the employee of Teays Valley, Teays Valley is vicariously liable for all actions of McNair.

10.     McNair, while an employee of Teays Valley, assisted King in the operative procedure set forth in Paragraph 8 above.  McNair's services were integral to the operative procedure performed by King.  The operative report lists McNair as assisting in the operative procedure in the capacity of a physician assistant or orthopedic physician assistant, and his participation in the operative procedure was in that capacity.

11.     At all times relevant to the allegations set forth in this Complaint, Wright Medical Technology, Inc. (sometimes hereafter referred to as "Wright Medical") was a foreign

corporation that sold or supplied to King, McNair and/or Teays Valley medical products, equipment and devices, including but not limited to MIG and Allomatrix.

12.     At all times relevant to the allegations set forth in this Complaint, Robert Edwards, aka Bob Edwards (sometimes referred to as "Edwards") was an employee of Wright Medical, acting within the scope of his employment.

13.     At all times relevant to the allegations set forth in this Complaint, EBI L.P. was a foreign company that sold or supplied to King, McNair and/or Teays Valley certain medical products, equipment and devices, including, but not limited to bone stimulators and a device known as an EBI ionic spacer.

## COUNT II
## Medical Malpractice

14.     Plaintiff restates and realleges all allegations contained in Count I hereinabove, as if fully set out herein.

15.     King and McNair failed to comply with the applicable standard of care in their diagnosis, treatment and performance of the surgical procedures described in Paragraph 8 of Count I of this Complaint.

16.     King and McNair failed to act in the same manner that reasonably prudent physicians and/or physicians' assistants would have acted when faced with the diagnosis, treatment, and surgical procedures that were provided to the plaintiff.

17.     The violations of the standard of care by King and McNair include, but are not limited to:

(a)     A failure to conduct a proper diagnosis of plaintiff's medical condition,

(b)     A failure to consider and/or institute alternative treatments,

4

    (c)     A failure to obtain an appropriate informed consent for the operative procedure performed on the plaintiff,

    (d)     A failure to perform plaintiff's appropriate surgical procedure in the same manner as a reasonably prudent physician or physician assistant would have acted under like or similar circumstances,

    (e)     The performance of enhanced and/or unnecessary surgical procedures on the plaintiff, and

    (f)     The use of contraindicated or inappropriate medical devices and equipment during the surgical procedures on the plaintiff.

18.    For a more particular description of the violations of the standard of care that occurred in the treatment of the plaintiff, you are referred to the Notice of Claim and Screening Certificates of Merit that have previously been served upon all defendants in this litigation.

19.    As a direct and proximate result of the negligence, carelessness, and recklessness of King and McNair, King and McNair failed to properly diagnose, treat and perform surgical procedures upon the plaintiff, in violation of the applicable standard of care.

20.    The actions of King and McNair evidence a willful, wanton or reckless disregard of the risk of harm to the plaintiff sufficient to allow the award of both compensatory and punitive damages.

21.    Teays Valley had a corresponding responsibility to ensure that an appropriate informed consent for the operative procedure performed on the plaintiff was obtained.  Teays Valley negligently, carelessly, willfully and recklessly failed to ensure that the appropriate informed consent was obtained.

22.     King failed to maintain the appropriate professional liability insurance limits required under the *West Virginia Medical Professional Act* so as to make Teays Valley vicariously liable for all actions of King.   Furthermore, Teays Valley held out King as its apparent or ostensible agent and, therefore, is vicariously liable for all negligent actions by King.

23.     Teays Valley, as the employer of McNair, is vicariously liable for all of the negligent acts performed by McNair during his course of treatment of the plaintiff.

24.     The actions of Teays Valley evidence a willful, wanton or reckless disregard of risk of harm to the plaintiff sufficient to allow the award of both compensatory and punitive damages.

## COUNT III
### Negligent Credentialing, Privileging Recruitment, Hiring, Supervison and Retention

25.     Plaintiff restates and realleges all allegations contained in Counts I and II hereinabove, as if fully set out herein.

26.     The Bylaws of the Medical Staff of Putnam General contain procedures for the granting of temporary privileges to physicians.   King applied for temporary privileges at Teays Valley on October 30, 2002, and again on January 5, 2003.   King was granted temporary privileges under his first application on November 5, 2002, and was granted additional temporary privileges under his second application on January 16, 2003.

27.     In adopting the Bylaws of the Medical Staff, Teays Valley established procedures for the permanent credentialing and privileging of physicians. King was granted permanent credentials and privileges by Teays Valley on February 7, 2003, in the fields of orthopedics and anesthesiology.   The specific privileges in orthopedics and anesthesiology that  were granted to King on both a temporary and permanent basis, are as follows:

*Delineation of Privileges – Orthopedics*

| | |
|---|---|
| Orthopedics | Amputation of an extremity |
| Orthopedics | Appropriate closed or open treatment of fractures and dislocations of the spine, pelvis, and extremities |
| Orthopedics | Arthrodesing a joint |
| Orthopedics | Incising tissues related to the musculoskeletal system including fascia, muscle, bone, tendon sheath and cartilage, as well as joint cavity, for the purpose of drainage, biopsy, removal of injured part, reconstruction of bone and joint or bone, joint tendon or ligament or replacement of such |
| Orthopedics | Introduce or remove implant made of metal or some other prosthetic material into either a bone or a joint |
| Orthopedics | Repairing, revising, or reconstructing skin, muscle, fascia, tendon, ligament and bone, including grafting as well as peripheral nerves |
| Orthopedics | Treatment of fractures by manipulation, or operations of skeletal structures, specifically excluding the skull or facial bones |
| Orthopedics | IV conscious sedation; Other: Total joints, revision total joint, adult cervical and lumbar spine surgery, foot, ankle, hip, hand, shoulder surgeries |

### *Delineation of Privileges – Anesthesiology*

| | |
|---|---|
| Anesthesiology | Diagnosis and management of pain |
| Anesthesiology | IV conscious sedation |

28.    Teays Valley negligently and with a willful, wanton, reckless and intentional disregard for its obligations of patient safety, granted King the temporary and permanent credentials and privileges set forth in the preceding paragraph.   The acts of negligence and willful, wanton, reckless and intentional misconduct that was committed by Teays Valley in granting both temporary and permanent credentials and privileges to King include, but are not limited to the following actions:

(a)     King submitted to Teays Valley two separate applications for medical staff appointment and clinical privileges, including an application dated October 19, 2002, and a second application dated December 17, 2002.  Neither document constituted a full and completed application because each contained significant omissions of mandatory information necessary for Teays Valley to meet its obligations under the credentialing and privileging process as was mandated by the standard of care, its own Bylaws of its Medical Staff, and by the Joint Commission on Accreditation of Health Care Organizations ["JCAHO"]. The applicable standard of care, the Medical Staff Bylaws, and even the October and December 2002 applications themselves, required King to provide full and complete information during the application process. The failure to obtain this information by Teays Valley resulted in multiple violations of the applicable standard of care.

(b)     The applicable standard of care required Teays Valley to obtain original source verification of King's licensure in the field of medicine.  In direct violation of the standard of care, Teays Valley negligently, willfully, wantonly, recklessly, and intentionally failed to obtain such information, but nonetheless granted both temporary and permanent credentials and privileges to King.

(c)     The applicable standard of care required Teays Valley to obtain original source verification of King's relevant medical training and experience.   In direct violation of the standard of care, Teays Valley negligently, willfully, wantonly, recklessly, and intentionally failed to obtain original source verification of King's

relevant medical training and experience, but nonetheless granted both temporary and permanent credentials and privileges to King.

(d)     The applicable standard of care required Teays Valley to ensure that King had the necessary current clinical competence to conduct the privileges he was requesting. In direct violation of the standard of care, Teays Valley negligently, willfully, wantonly, recklessly, and intentionally failed to obtain appropriate evidence of current clinical competence, but nonetheless granted both temporary and permanent credentials and privileges to King.

(e)     The applicable standard of care required Teays Valley to develop appropriate criteria for the granting of clinical privileges in order to determine an applicant's ability to perform patient care services within the scope of all clinical privileges requested.  In direct violation of the standard of care, Teays Valley negligently, willfully, wantonly, recklessly, and intentionally failed to develop such criteria, but nonetheless granted both temporary and permanent credentials and privileges to King.

(f)     The applicable standard of care required Teays Valley to comply with its own Bylaws of its Medical Staff, as well as its Corporate Bylaws, in the granting of temporary and permanent credentials and privileges to King.  In direct violation of the standard of care, the Bylaws of the Medical Staff, and its own Corporate Bylaws, Teays Valley negligently, willfully, wantonly, recklessly, and intentionally failed to comply with its own internal requirements for the granting of medical staff membership and clinical privileges.

(g)     At all times relevant to the allegations contained in this Complaint, Teays Valley was the named owner of a medical facility known as PGH, which provided medical services and facilities to the general public, and advertised and warranted to the general public, including citizens of the State of West Virginia, that it was a hospital that provided general surgical services, including orthopedic surgeons and that the physicians credentialed and privileged to practice in that facility were qualified and competent physicians.

(h)     As a direct and proximate result of the allegations set forth in this Complaint, Teays Valley owed a duty to the citizens of West Virginia, including the plaintiff, to exercise due and proper care in the operation, selection, credentialing, privileging and supervision of its medical care services and facilities, including the hiring of employees, the granting of medical staff privileges to physicians who practice at their facilities, and continued monitoring and supervision of the care, treatment, and services provided by its employees and medical staff.

(i)     Teays Valley negligently, willfully, wantonly, recklessly and intentionally failed to comply with its duties to hire, supervise, and administer its medical staff and facilities at PGH as the same relates to the hiring or granting medical staff privileges to King and McNair, and/or the supervision and continued monitoring of King and McNair.

(j)     Teays Valley knew or should have known that King did not have the minimum levels of educational training, experience, and competency to be granted temporary or permanent credentials or privileges by it.  The frequency and severity of the deviations from the applicable standard of care committed by

Teays Valley evidence a willful, wanton, reckless, and intentional disregard for its obligations of patients' safety in the credentialing and privileging process so as to justify an award for both compensatory and punitive damages.   But for the deviations in the applicable standard of care, King would not have been granted temporary or permanent credentials by Teays Valley, and to the extent that King deviated from the applicable standard of care in any of his operative procedures, Teays Valley is liable for any damage award rendered against King.

(k)     At all times related to the operative procedures referenced in this Complaint, McNair was employed by Teays Valley and worked in the capacity of physician assistant or orthopedic physician assistant.   The applicable standard of care required Teays Valley to conduct credentialing and privileging of allied health professionals such as physician assistants.

(l)     At all times relevant to the operative procedure referenced in this Complaint, an individual who was performing the duties and/or responsibilities as a physician assistant was required, under the provisions of *West Virginia Code § 30-14A-1* and/or *West Virginia Code § 30-3-16*, to be licensed.   The State of West Virginia Board of Osteopathy and the State of West Virginia Board of Medicine have each confirmed that McNair was never licensed by either of those entities as a physician assistant.

(m)     Teays Valley negligently, willfully, wantonly, recklessly and intentionally allowed McNair, as its employee, to perform the duties of a physician assistant during the operative procedure referenced in this litigation.   Because McNair was not licensed as a physician assistant, he was not legally allowed to perform those

services but, nonetheless, the operative report prepared by King notes that McNair assisted in the operative procedure as an orthopedic physician assistant and was integral to the operative procedure.

(n) Teays Valley, in direct violation of the standard of care, negligently, willfully, wantonly, recklessly and intentionally failed to appropriately credential and privilege McNair. The frequency and severity of the deviations from the applicable standard of care committed by Teays Valley evidences a willful, wanton, and intentional disregard for its obligations of patient safety in the credentialing and privileging process so as to justify an award of both compensatory and punitive damages. But for the deviations in the applicable standard of care to ensure the appropriate credentialing and privileging of McNair, McNair would not been to permitted to assist, and in some instances perform operative procedures at Teays Valley. To the extent that McNair deviated from the applicable standard of care in any of the operative procedures he participated in, Teays Valley is vicariously liable for any damage award rendered against McNair.

(o) Prior to both the credentialing and privileging of King, Teays Valley had been the subject of a full survey of its hospital conducted by JCAHO on October 2, 2000 and on August 14, 2002. JCAHO's survey of October 1999 found that Teays Valley, under credentialing compliance, fell in the bottom 36 percent of all accredited surveyed hospitals in the United States. During the full survey performed two years later, JCAHO again identified performance deficiencies in the area of credentialing and privileging. Under its evaluation of Teays Valley's

credentialing compliance, JCAHO found that Teays Valley had fallen by more than 100 percent to place it in the bottom 16 percent of examined accredited facilities. At the time Teays Valley credentialed and privileged King and McNair, it was on notice of significant deficiencies in its credentialing and privileging process but, nonetheless, continued to negligently, willfully, wantonly, recklessly and intentionally fail to comply with the applicable standard of care in the credentialing and privileging of each of these individuals. Teays Valley's failures, in light of its prior notices of deficiencies, gives rise to a claim for both compensatory and punitive damages for its gross actions and inactions in the credentialing and privileging process of both King and McNair.

(p)     At all times relevant to the credentialing and privileging of King and McNair, Frank Molinaro was the acting CEO of Teays Valley. Molinaro was appointed to his position as CEO of Teays Valley as a result of the direct actions of the defendant HCA, Healthtrust and/or Hospital Corp. Molinaro personally participated in the credentialing process, personally participated in the recruitment of King and McNair, personally granted temporary privileges to King, and was personally involved in the ultimate decision-making process to grant medical staff membership and clinical privileges to King and the decision to allow McNair to practice at PGH. Molinaro's participation in the credentialing process was done negligently, and the substance and nature of his deviations from the standard of care evidence a willful, wanton, reckless and intentional disregard for the patient safety responsibilities. Because Molinaro was appointed to his position as CEO of Teays Valley by HCA, Healthtrust and/or Hospital Corp, then HCA,

Healthtrust and Hospital Corp are vicariously liable for all actions and inactions committed by Molinaro in the credentialing and privileging process as well as the retention of King and McNair.

29.    Teays Valley negligently recruited King for its medical staff, when it knew or should have known that King did not possess the appropriate qualifications for recruitment or medical staff membership. Teays Valley negligently retained King on its medical staff when it knew or should have known that King was committing medical malpractice on patients at its facility, had misrepresented his qualifications and otherwise did not have the mandatory minimum levels of competence necessary for medical staff membership.

30.    Teays Valley negligently recruited, supervised, retained and hired McNair when it knew or should have known that McNair did not possess the appropriate qualifications for recruitment as a physician assistant or orthopedic physician assistant.  Teays Valley negligently hired McNair when it knew or should have known that McNair was committing malpractice on patients at its facility, had misrepresented his qualifications, and otherwise did not have the mandatory levels of competence to perform his job as a physician assistant or orthopedic physician assistant.

31.    After it discovered the negligent and inappropriate actions of King and McNair, Teays Valley entered into a course of conduct in order to cover up and hinder any investigation of claims against King and McNair. Teays Valley's cover up included, but was not limited to (a) not conducting a sentinel event evaluation as a result of the injuries suffered by various patients, (b) not conducting a sentinel event evaluation after discovering King and McNair's lack of qualifications, (c) failing to report to JCAHO the flaws in its credentialing and privileging process for both King and McNair, (d) failing to report to JCAHO the sentinel events dealing

with King and McNair's recruitment, hiring, retention, and acts of malpractice upon various patients, and (e) a complete failure to comply with JCAHO's requirement of reporting unexpected or unintended outcomes to its patients.

32.     The acts of Teays Valley in negligently credentialing, privileging, recruiting, supervising, hiring and retaining King and McNair were done with such a willful, wanton and reckless disregard for its obligations to patients' safety, so as to allow a claim for both compensatory and punitive damages to be presented against it.

## COUNT IV
## Wright Medical and Edwards

33.     Plaintiff restates and realleges all allegations contained in Counts I, II and III, as if set out verbatim herein.

34.     Wright Medical and/or Edwards knew or should have known that King did not have the appropriate qualifications, training, and expertise to use Wright Medical's products, equipment, and medical devices in the appropriate manner during the plaintiff's surgery.

35.     Wright Medical and/or Edwards were aware that King was using Wright Medical's products, equipment and medical devices in a manner not suitable for their intended use, and further knew that King was negligently performing surgeries using Wright Medical products, equipment and medical devices in an inappropriate manner.

36.     In selling its products, equipment and medical devices Wright Medical and/or Edwards warranted that said products were reasonably safe for their intended use, included the use to which they were put during the plaintiff's surgery.

37.     The products, equipment and medical devices sold by Wright Medical and/or Edwards, including MIG and Allomatrix, were not reasonably fit for their intended use, giving rise to a claim or cause of action for strict liability against Wright Medical and/or Edwards.

38.     Wright Medical and/or Edwards willfully, negligently, and carelessly failed to warn, inform, instruct and apprise the plaintiff that its products were not reasonably safe for use in the plaintiff's surgery due to the manner in which King and McNair were using the products.

39.     Wright Medical and/or Edwards, in manufacturing, selling and distributing products, equipment and medical devices, including MIG and Allomatrix, had the duty to use due care and diligence to the general public in general and to the plaintiff in particular, to reasonably ensure that its products were being used in a proper manner and that its products were reasonably safe for their intended use.

40.     The defendants Wright Medical and/or Edwards manufactured, sold and distributed a product that was defective in that it was not reasonably safe for its intended use.

41.     Wright Medical, in supplying King, McNair and/or Teays Valley its products, equipment and medical devices, breached certain warranties owed to the plaintiff, including express and implied warranties and the warranty of fitness for a particular purpose.

42.     Based upon information and belief, King, Wright Medical and/or Edwards entered into an agreement involving improper remuneration for King's use of Wright Medical products. This remuneration agreement, along with other actions of Wright Medical and Edwards, amounted to King, Wright Medical and Edwards entering into a joint venture, thereby making Wright Medical and Edwards liable for all damages awarded against King.

43.     Wright Medical and Edwards, negligently, willfully, recklessly and intentionally sold and/or provided to King, McNair and Teays Valley products which Wright Medical and Edwards knew were not reasonably suited for the uses being made by King and McNair but, nonetheless, negligently continued to sell those products to King, McNair and Teays Valley in

order to enhance Wright Medical and Edwards' income to the detriment of King's patients, including the plaintiff.

44.     Wright Medical and Edwards knew that the use of its products, equipment and medical devices by King and McNair were inappropriate for use in the operation performed on the plaintiff but, nonetheless, sold said product, equipment and medical device knowing of its improper use by King.

45.     (a)     On April 11, 2001, the Food and Drug Administration forwarded a "Warning Letter" to Wright Medical regarding the sale and marketing of Allomatrix. The FDA informed Wright Medical that its product was a medical device and was subject to the pre-market notification requirements of the Federal Food, Drug, and Cosmetic Act. The FDA determined that Allomatrix was a medical device "because it is used to diagnose or treat a medical condition or to effect the structure or function of the body". In its April 11, 2001 correspondence, the FDA informed Wright Medical that because it did not have marketing clearance from the FDA, the continued marketing of Allomatrix was a violation of the law and that the FDA considered, until clearance was obtained from the FDA, that Allomatrix was "adulterated" under the Act, and that it was "misbranded". Wright Medical did not obtain marketing clearance from the FDA for Allomatrix until the year 2004.

(b)     Wright Medical and Edwards knew that the Allomatrix that was supplied to King, McNair and/or Teays Valley had been declared a medical device the United States Food and Drug Administration, and that Allomatrix could not be sold or distributed prior to receiving clearance from the FDA. Wright Medical and Edwards knew that at the time Allomatrix was supplied to King, McNair and/or Teays Valley clearance had not been obtained from the FDA for the sale and distribution of Allomatrix. Wright Medical and Edwards knew that the only

manner in which Allomatrix could be legally sold or distributed to King, McNair and/or Teays Valley during the years 2002 and 2003, would be if Wright Medical received an investigational device exemption from the FDA, and an institutional review board had been established at Teays Valley for the use of that product. Wright Medical and Edwards knew that at the time Allomatrix was supplied to King, McNair and/or Teays Valley that no investigational device exemption had been issued to Wright Medical by the FDA, and no institutional review board had been established at Teays Valley for the use of Allomatrix. Nonetheless, Wright Medical and Edwards willfully, wantonly and intentionally sold, supplied and distributed Allomatrix to King, McNair and/or Teays Valley for use in the plaintiff's operation, in direct violation of the prohibitions established by law. Wright Medical and Edwards knew that the informed consents necessary for the use of its product on the plaintiff had not and were obtained.

46.    Regardless of the approval of Allomatrix, Wright Medical and Edwards knew that its use in surgical procedures being performed by King and McNair on the plaintiff was an inappropriate use of the product and the likelihood of the plaintiff having a successful outcome as a result of King and McNair's surgery was significantly impaired because of the improper use of Allomatrix by King and McNair. Nonetheless, Wright Medical and Edwards continued to sell and supply Allomatrix to King, McNair and/or Teays Valley's use.

47.    The actions of Wright Medical and Edwards evidence a willful, wanton or reckless disregard of risk of harm to the plaintiff sufficient to allow the award of both compensatory and punitive damages.

## COUNT V
## EBI L.P.

48.    Plaintiff restates and realleges all allegations contained in Counts I, II, III, and IV, as if set out verbatim herein.

49. EBI knew or should have known that King did not have the required qualifications, training and expertise to use EBI's products, equipment and medical devices in the appropriate manner during plaintiff's surgery.

50. EBI was aware that King was using EBI's products, equipment, and medical devices in a manner not suitable for their intended use, and further knew that King was negligently performing surgeries using EBI's products, equipment and medical devices in an inappropriate manner.

51. EBI, in supplying King, McNair and/or Teays Valley its products, equipment and medical devices, breached certain warranties owed to the plaintiff, including express and implied warranties and the warranty of fitness for a particular purpose.

52. In selling its products, equipment and medical devices EBI warranted that said products were reasonably safe for their intended use, included the use to which they were put during the plaintiff's surgery.

53. The products, equipment and medical devices sold by EBI, including ionic spacers and/or spinal stimulators, were not reasonably fit for their intended use, giving rise to a claim or cause of action for strict liability against EBI.

54. EBI willfully, negligently, and carelessly failed to warn, inform, instruct and apprise the plaintiff that its products were not reasonably safe for use in the plaintiff's surgery due to the manner in which King and McNair were using the products.

55. EBI, in manufacturing, selling and distributing products, equipment and medical devices, including ionic spacers and/or spinal stimulators, had the duty to use due care and diligence to the general public in general and to the plaintiff in particular, to reasonably ensure

that its products were being used in a proper manner and that its products were reasonably safe for their intended use.

56.    The defendant EBI manufactured, sold and distributed products that were defective in that they were not reasonably safe for its intended use.

57.    EBI negligently, willfully, recklessly and intentionally sold and/or provided to King, McNair and/or Teays Valley products which EBI knew were not reasonably suited for the uses being made by King and McNair but, nonetheless, continued to sell these products to King, McNair and/or Teays Valley in order to enhance EBI's income to the detriment of King's patients, including the plaintiff.

58.    At the time King and McNair performed surgery on the plaintiff, EBI was aware of King's use of Allomatrix, King's failure to use autogenous bone graft, and was further aware of the likelihood that no fusion would occur as a result of plaintiff's surgery was significantly increased.   At the time King and McNair performed surgery on the plaintiff, EBI was aware that King was using spinal stimulators on some patients.   EBI was further aware that the use of its spinal stimulators solely and in conjunction with the use of Allomatrix would provide no benefit to a surgical candidate. At the time King and McNair performed surgery on the plaintiff, EBI was aware that King was that using EBI's ionic spacers in a manner totally inconsistent with EBI's surgical technique manual for the ionic spacer.   EBI further was aware that King was using EBI's ionic spacer in a manner totally contradictory to the marketing clearance it had obtained for that product from the United States Food and Drug Administration.

59.    The actions between EBI and King constituted a joint venture, thereby making EBI liable for all damages awarded against King in this litigation.

60.     The actions of EBI evidence a willful, wanton or reckless disregard of risk of harm to the plaintiff sufficient to allow the award of both compensatory and punitive damages.

## COUNT VI
### Trespass, Assault and Battery

61.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV and V hereinabove, as if fully set out herein.

62     McNair provided the services of a physician assistant or orthopedic physician assistant during the operative procedure that is the subject of this litigation. He was not licensed to do so. His integral involvement in the operative procedure while not being qualified and while being unlicensed amounts to a trespass against the plaintiff, as well as assault and battery. As the employer of McNair, Teays Valley is vicariously liable for the trespass, assault and battery committed by McNair through his participation in the plaintiff's operative procedure.

63.     As has been set forth in the Screening Certificate of Merit referenced in this Complaint, the operative procedure performed by King was both negligent and unnecessary. The actions of King in performing a negligent and unnecessary surgery upon the plaintiff amount to a trespass, assault and battery.

## COUNT VII
### Civil Conspiracy

64.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, and VI hereinabove, as if fully set out herein.

65.     EBI L.P., Wright Medical, Edwards and Teays Valley, in conjunction with Molinaro and its employee McNair, and through the actions of King, conspired together in a civil conspiracy, which permitted and allowed King and McNair to perform negligent and

unnecessary operative procedures on the plaintiff. Each is liable under a claim of civil conspiracy.

## COUNT VIII
### Intentional and Negligent Infliction of Emotional Distress

66.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV V, and VII hereinabove, as if fully set out herein.

67.     The actions of EBI L.P., Wright Medical and Edwards in conjunction with the actions of King and McNair constitute a tort of intentional or negligent inflection of emotion distress.

68.     Teays Valley in allowing McNair and King to perform negligent and unnecessary operative procedures on the plaintiff, and allowing an unlicensed physician assistant to participate in plaintiff's surgery, and in allowing King to perform operative procedures when Teays Valley knew or should have known that King did not have the appropriate qualifications to be granted temporary or permanent credentials and privileges, constitutes the tort of intentional or negligent infliction of emotional distress on the plaintiff.

69.     The actions of McNair and King, in performing negligent and unnecessary operation procedures, constitute a tort of intentional or negligent infliction of emotional distress on the plaintiff.

## COUNT IX
### Tort of Outrage

70.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, and VIII hereinabove, as if fully set out herein.

71.     The actions of EBI L.P., Wright Medical, Edwards, Teays Valley, McNair and King, were so outrageous in character, and so extreme in degree as to go beyond all possible

bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized community. The conduct of Wright Medical, Edwards, Teays Valley, McNair and King, taken together or individually, constitutes the tort of outrage.

## COUNT X
## Fraud and Deceit

72.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, VIII and IX hereinabove, as if fully set out herein.

73.     Teays Valley, through its credentialing and privileging process, held out both King and McNair to the public, and more particularly to this plaintiff, as being qualified and competent in the fields in which they had been granted credentials and privileges. McNair, in providing his assistance in the plaintiff's operative procedure as a physician assistant or orthopedic physician assistant, held out to the plaintiff that he was competent and legally qualified to provide those services. King, in undertaking a physician-patient relationship with the plaintiff, held out to the plaintiff that he was qualified, competent, and trained in the operative procedures that he was performing on the plaintiff. The actions of Teays Valley, King and McNair, either individually or in conjunction, constituted a fraud on the plaintiff, thereby allowing a cause of action for fraud and deceit to arise as a result of the actions of the defendants.

67.     Plaintiff detrimentally relied upon Teays Valley to appropriately credential and privilege both McNair and King, and to ensure that only competent physicians were allowed to practice at PGH. Plaintiff further relied upon the representations, both express and implied, by McNair and King that they were appropriately licensed and were competent to perform the operative procedures they conducted on plaintiff.

68.     Prior to his surgical procedure, King and/or McNair expressly represented to plaintiff that without performing the surgical procedure King was to undertake, the plaintiff's

disc would slide down and cause walking to be difficult or impossible in the future. King and/or McNair further represented to the plaintiff that something was leaking in the disc in plaintiff's back and poisoning him, and he needed to have eight discs replaced. King and/or McNair knew that these representations were false and untrue. Plaintiff detrimentally relied upon these representations in electing to permit King and McNair to perform a surgical procedure upon him. Plaintiff was subjected to an unnecessary operative procedure performed by King and/or McNair. The actions of King and McNair, either individually or together, constituted a fraud on the plaintiff, thereby allowing a cause of action for fraud and deceit to arise as a result of the actions of King and McNair.

69.     Wright Medical, Edwards, and EBI knew that the use King and McNair were making of their products and medical devices were inappropriate, contraindicated, and violated the applicable standard of care. Nonetheless, Wright Medical, Edwards, and EBI continued to sell and supply Wright Medical's and EBI's products and medical devices for King and McNair's use in surgical procedures, including the surgical procedure performed on the plaintiff. Wright Medical, Edwards, and EBI provided substantial assistance to King and McNair in their surgical procedures, and were integral in allowing King and McNair to use Wright Medical's and EBI's products and medical devices inappropriately. Wright Medical, Edwards and EBI were either direct participants in the fraud committed by King and McNair, or conspired with King and McNair to commit fraud and deceit upon the plaintiff, thereby allowing a cause of action of fraud and deceit to arise as a result of the actions of Wright Medical, Edwards and EBI.

## COUNT XI
## Joint Venture/Joint Enterprise

70.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, VIII, IX, and X hereinabove, as if fully set out herein.

71.     At all times relevant to the allegations set forth in this Complaint, EBI L.P., Wright Medical, Edwards, Teays Valley, McNair and King were involved in a joint venture or joint enterprise under West Virginia law.  As members of a joint venture or joint enterprise, each member of the joint venture or enterprise is liable for the negligent, willful, wanton, reckless or intentional actions of the other.  Therefore, EBI L.P., Wright Medical, Edwards, Teays Valley, McNair and King are each jointly and severally liable for any damages that may be awarded against any of them for the negligent, willful, wanton, reckless and intentional acts that occurred during the operative procedure performed upon the plaintiff.

## COUNT XII
## Alter Ego/Piercing Corporate Veil

72.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, VIII, IX, X and XI hereinabove, as if fully set out herein.

73.     Teays Valley, while a West Virginia corporation, is a wholly owned subsidiary of HCA.  While Teays Valley's only business involves the operation of a hospital in Putnam County, West Virginia, nonetheless it lists with the West Virginia Secretary of State its principal place of business as being in Nashville, Tennessee, which is where the corporate headquarters of HCA is located.  Teays Valley has a Board of Trustees, but according to the Bylaws of Teays Valley, in reality the Board of Trustees (consisting of West Virginia residents) is in effect advisory only, and does not control the financial operations of Teays Valley.

74.     HCA owned, operated, and controlled Teays Valley through a set of corporate enterprises.  The ownership scheme established by HCA consists of the following: HCA owns 100 percent of Healthtrust, which is the sole member of Hospital Corp, which owns 100 percent of Teays Valley, Healthtrust and Hospital Corp are non-operating holding companies that have

no employees. HCA is and was at all times relevant to the complaint the *de facto* corporate parent of Teays Valley, which had employees.

75. HCA, Healthtrust, Hospital Corp and Teays Valley disregarded their respective corporate formalities and shared such unity of interest that they ceased to exist as a separate corporation, and Healthtrust, and/or Hospital Corp, and/or HCA became and is the alter ego of Teays Valley.

76. Injustice or inequity would befall the plaintiff, and others, if the plaintiff were limited to seeking recovery solely against Teays Valley. As was disclosed in litigation in the Circuit Court of Kanawha County, West Virginia in Civil Action Number 04-C-649, Teays Valley revealed that it, in an unaudited financial statement dated September 30, 2004, only had a net worth of Sixteen Million One Hundred Eighty Six Thousand One Hundred Forty Six Dollars $16,186,146.00. The unaudited income statement, for the nine (9) months ending September 30, 2004, shows that Teays Valley had a pre-tax net income loss exceeding Seven Hundred Thousand Dollars ($700,000.00). Plaintiff states, upon information and belief, that on or about the 15th day of November 2004, counsel for the plaintiff in this litigation forwarded, pursuant to the provisions of *West Virginia Code § 55-7B-6,* notices of claims and screening certificates of merit for approximately forty-nine (49) individuals who claim that they were injured as a result of the negligence of King, McNair, and Teays Valley. Upon information and belief, plaintiff believes that there are multiple other claims that will be asserted against the same individuals and entities. The number of plaintiffs, the significance of injuries, and the punitive damages which will be sought in those combined civil actions dwarf the net assets of Teays Valley and therefore create an injustice or inequity that would befall the plaintiff or limit the plaintiff in seeking recovery solely against Teays Valley. It would further create an injustice and inequity for HCA

to have established a corporate scheme of ownership, controlled and directed the actions of Teays Valley, appointed its CEO, and otherwise directed its activities, and HCA and/or Healthtrust, and/or Hospital Corp be able to escape its liabilities.

74.     HCA, Healthtrust and Hospital Corp are legally liable for all obligations and liabilities owed by Teays Valley to the plaintiff.

## COUNT XIII
### Civil Conspiracy/Violation of Corporation Laws/Sham Transaction

75.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, and XII hereinabove, as if fully set out herein.

76.     The defendant, HCA, Healthtrust, and/or Hospital Corp directly, through its agents, servants, and employees operates and controls the business and operation of PGH disregarding the actual corporation Teays Valley.  Such disregard includes, but is not limited to:

(a)     Failing to file and comply with corporate formalities including subsidiary registrations;

(b)     Operating a sham or pretend board of directors in the form of a "Board of Trustees";

(c)     PGH through its agents, servants and employees disregard of corporate formalities;

(d)     Disregard of the West Virginia Corporation Law that requires a West Virginia Corporation to operate solely under the jurisdiction, control, and management of its Board of Directors;

(e)     Using fictional officer filings with the West Virginia Secretary of State and other government agencies that list individuals as the "Officers" of Teays Valley when, in fact, such individuals do not fulfill any functions associated with being

corporate officers in the management and operation of a corporation and being unanswerable to its Board of Directors; and

(f)     Using "mirrored" or identical officer filings for "subsidiary and corporations" operated by HCA, when, in fact, such subsidiary corporations are, in fact, the alter egos of the parent and the listed "mirror" officers do not fulfill the duties of corporate officers.

77.     HCA has created one or more "shell" corporations or incorporated business entities to isolate its purported ownership of Teays Valley, by inconsistently listing Teays Valley and PGH as subsidiaries of HCA in financial statements.  HCA intends to cloak or deceive the public and the judiciary while inserting shell entities as purported owners of Teays Valley. Included in such a plan is the purported ownership of Teays Valley stock by Hospital Corp, a Delaware limited liability company incorrectly using the name "corporation" as a device, sham, or diversion and the ownership or alleged ownership of such limited liability company by Healthtrust, a Delaware corporation with no significant assets or business purpose.  The use of such intermediate entities has no legitimate business purpose; such business entities were created solely for "asset protection" and constitute a sham, device or artifice to defraud creditors and the public including the Plaintiff.

78.     HCA in its business plan or scheme of "asset protection" has also incorporated and created a subsidiary insurance company to reportedly insure the liabilities of the shell entities owned by HCA, all as a part of a scheme or artifice to provide "asset protection" as a fraud, device and scheme upon the public and this plaintiff in particular.

79.     The agents, servants, and employees of defendant HCA directly own, operate, and control PGH.  The use of various business entities and corporations such as Teays Valley,

Hospital Corp, and Healthtrust as mere shams or devices to camouflage the true and direct ownership and operation of PGH by HCA is a fraud, device, and scheme upon the public and this plaintiff.

80.    HCA, Healthtrust and Hospital Corp. are legally liable for all obligations and liabilities owed by Teays Valley to the plaintiff.

**COUNT XIV**
**Damages**

81.    As a proximate result of the defendants' negligent, willful, wanton, reckless and intentional actions set forth in this Complaint, including, but not limited to claims for (a) medical malpractice, (b) negligent credentialing, privileging, recruitment, hiring, supervision and retention, (c) lack of informed consent, (d) breach of warranty, (e) failure to warn, (f) products liability, (g) negligent sale and distribution of medical products and devices, (h) trespass and assault and battery, (i) joint venture/joint enterprise, (j) civil conspiracy, (k) intentional and negligent infliction of emotional distress, (l) fraud and deceit, and (m) the tort of outrage, the plaintiff was injured as a result of the actions of the defendants.  Plaintiff has and will in the future suffer extreme pain, humiliation and embarrassment, and emotional distress and anguish; has and will in the future suffer psychological damages; has suffered permanent injuries and scarring; has and will in the future be prevented from engaging in normal activities; has and will in the future incur considerable medical and hospital expenses; and has or may incur lost wages and/or reduced earning capacity.

82.    Plaintiff Stephen Coiner has suffered a loss of consortium as a result of the defendants' negligence in treating his wife.  This loss includes, but is not limited to conjugal fellowship of husband and wife, society, affection, material services, guidance, companionship, and sexual relationship.

83.    Plaintiff Jarrod Coiner, a minor, has suffered a parental loss of consortium, including but not limited to affection, companionship, society, guidance, and material services.

84.    The willful, wanton, intentional and reckless actions of the defendants give rise to a claim for punitive damages.

**WHEREFORE**, plaintiffs demand judgment, jointly and severally, against Teays Valley Health Services, Inc., d/b/a Putnam General Hospital, HCA, Inc., Healthtrust, Inc. – The Hospital Company, and Hospital Corp, L.L.C., John A. King, DO, David McNair, Wright Technology, Inc., Robert Edwards aka Bob Edwards, and EBI L.P., for the allegations set forth in this complaint.   Plaintiff seeks recovery against said defendants, jointly and severally, for both compensatory and punitive damages, plus prejudgment and post-judgment interest, attorneys' fees, costs, expenses, and all other damages allowed by West Virginia law.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

**LISA COINER, STEPHEN COINER, and JARROD COINER, a minor under the age of 18 years, who sues by his father, STEPHEN COINER**
By Counsel

Arden J. Curry, II, Esquire. (WV Bar # 907)
Curry & Tolliver, P.L.L.C.
100 Kanawha Boulevard, West
P.O. Box 11866
Charleston, WV 25338-1866
(304) 343-7200

Jack D. Tolliver, M.D., J.D. (WV Bar # 8939)
Curry & Tolliver, P.L.L.C.
100 Kanawha Boulevard, West
P.O. Box 11866
Charleston, WV 25338-1866
(304) 343-7200



### *State of West Virginia*

*Joe Manchin, III*

*Secretary of State*

**Secretary of State's Office**
**Building 1, Suite 157-K**
**1900 Kanawha Blvd., East**
**Charleston, WV 25305-0770**

Telephone: (304) 558-6000
Corporations: (304) 558-8000
FAX: (304) 558-0900
wvsos@secretary.state.wv.us
www.state.wv.us/sos/

# LEGAL NOTICE

January 7, 2005

Donald A. Wright, Circuit Clerk
Putnam County Courthouse
3389 Winfield Road
Winfield, WV  25213-0358

Civil Action: 04-C-472

*2005 JAN 11  AM 11: 37*
*FILED*
*DONALD A. WRIGHT, CLERK*
*PUTNAM CO. CIRCUIT COURT*

I am enclosing:

| | | | |
|---|---|---|---|
| ____ | summons | __1__ | original |
| ____ | notice | ____ | affidavit |
| ____ | order | ____ | answer |
| ____ | petition | ____ | cross-claim |
| ____ | motion | ____ | counterclaim |
| ____ | interrogatories | ____ | request |
| ____ | suggestions | ____ | demand |
| ____ | subpoena duces tecum | ____ | default judgement |
| ____ | summons and complaint | ____ | complaint |
| ____ | 3rd party summons and complaint | ____ | notice of mechanic's lien |
| ____ | summons returned from post office | ____ | suggestee execution |
| __1__ | certified return receipt | ____ | summons and amended complaint |

which was served on the Secretary at the State Capitol in his capacity as your statutory attorney-in-fact.
According to law, I have accepted service of process in the name and on behalf of Wright Medical Technology, Inc..

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about these documents directly to the court or to the plaintiff's attorney, shown in the enclosed paper. Please, do not call the Secretary of State's office.*

Sincerely,

*Vicki Haught*

Vicki Haught
Supervisor

# SUMMONS

## CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

LISA COINER, STEPHEN COINER,
and JARROD COINER, a minor under the
Age of 18 years, who sues by his father,
Stephen Coiner,

CIVIL ACTION NO. 04-C-472

          Plaintiffs,

Vs.

JOHN A. KING, D.O.
DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
   d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.;
HEALTHTRUST, INC. – THE HOSPITAL COMPANY,
   a foreign corporation;
HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
   a foreign corporation;
ROBERT EDWARDS, aka BOB EDWARDS, and
EBI, L. P.,

          Defendants

**To the above-named Defendant:**

     IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon:

          Arden J. Curry, II
          Curry & Tolliver
          P. O. Box 11866
          Charleston, WV 25338

plaintiff's attorney, an answer, including any related counterclaim you may have, to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within **30** days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated:___December____20____, 2004

                             Donald A Wright
                             B.M.
                  Clerk of Court



2. Article Number

7160 3901 9848 4260 5375

3. Service Type   **CERTIFIED MAIL**

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

1. Article Addressed to:
04-C-472

Wright Medical Technology, Inc.
Corporation Service Co.
209 West Washington Street
Charleston, WV 25302

PS Form 3811, July 2001

Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by *(Please Print Clearly)*   B. Date of Delivery

C. Signature
X   ☐ Agent
    ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No



## OFFICE OF THE SECRETARY OF STATE
### STATE OF WEST VIRGINIA



**Betty Ireland**
**Secretary of State**

2005 MAR 28 PM 12: 23

FILED
DONALD A. WRIGHT, CLERK
PUTNAM CO. CIRCUIT COURT

Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, West Virginia 25305
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

# LEGAL NOTICE

Donald A. Wright, Circuit Clerk
Putnam County Courthouse
3389 Winfield Road
Winfield, WV 25213-0358

March 23, 2005

Civil Action: 04-C-472

I am enclosing:

| | | | |
|---|---|---|---|
| _____ | summons | __1__ | original |
| _____ | notice | _____ | affidavit |
| _____ | order | _____ | answer |
| _____ | petition | _____ | cross-claim |
| _____ | motion | _____ | counterclaim |
| _____ | interrogatories | _____ | request |
| _____ | suggestions | _____ | demand |
| _____ | subpoena duces tecum | _____ | default judgement |
| _____ | summons and complaint | _____ | complaint |
| _____ | 3rd party summons and complaint | _____ | notice of mechanic's lien |
| _____ | summons returned from post office | _____ | suggestee execution |
| __1__ | certified return receipt | _____ | summons and amended complaint |

which was served on the Secretary at the State Capitol in her capacity as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of John A. King, D.O..

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about these documents directly to the court or to the plantiff's attorney, shown in the enclosed paper. Please do not call the Secretary of State's office.*

Sincerely,

Vicki Haught
Manager

**S U M M O N S**

CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

LISA COINER, STEPHEN COINER,
and JARROD COINER, a minor under the
Age of 18 years, who sues by his father,
Stephen Coiner,

CIVIL ACTION NO. ___04 C-472___

        Plaintiffs,

Vs.

JOHN A. KING, D.O.
DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
   d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.;
HEALTHTRUST, INC. – THE HOSPITAL COMPANY,
   a foreign corporation;
HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
   a foreign corporation;
ROBERT EDWARDS, aka BOB EDWARDS, and
EBI, L. P.,

        Defendants

**To the above-named Defendant:**

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required
to serve upon:

        Arden J. Curry, II
        Curry & Tolliver
        P. O. Box 11866
        Charleston, WV 25338

plaintiff's attorney, an answer, including any rela...          to the complaint filed

against you in the above-styled civ|          red to you.  You are

required to serve your answer withi|          ou, exclusive of the

day of service.  If you fail to do so, ju|          he relief demanded

in the complaint and you will be the|          ιy claim you may

have which must be asserted by counte|

Dated: __December   20  __, 2004|

                                          Donald A. Wright
        Clerk of Court

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)
Shirley Melendez

B. Date of Delivery
3-8-05

C. Signature
X Shirley Melendez
☐ Agent
☐ Addressee

D. Is delivery address different from Item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

2. Article Number

7160 3901 9848 9214 4775

3. Service Type   CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

1. Article Addressed to:

04-C-472
John A. King, D.O.
11310 South Orange Blossom
Trail #232
Orlando, FL 32832-9421

PS Form 3811, July 2001          Domestic Return Receipt

*15*

# IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

**LISA COINER and STEPHEN COINER,**

> **Plaintiff,**

*v.*                                                                 **CIVIL ACTION NO. 04-C-472**

**JOHN A. KING, DO, ET AL**

> **Defendants.**

## NOTICE

**TO:    John A. King, DO**
        11310 S. Orange Blossom Trail, Suite 232, Orlando, FL 32837

The enclosed summons and *complaint* are served pursuant to Rule 4(d)(1)(E) of the West Virginia Rules of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed form to the Office of the Clerk of the Circuit Court of Putnam County, West Virginia, within **20** days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the Office of the Clerk of the Circuit Court of Putnam County within **20** days, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf) you are being served) must answer the complaint within **20** days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare that this Notice and Acknowledgment of Receipt of Summons and Complaint was mailed on ____4.27____ , 2005.

> *Donald a Wright (m*
> Clerk of Court
> Putnam County Courthouse
> 3389 Winfield Road
> Winfield, WV 25213

Date of Signature: **April _27_  2005**

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above-captioned matter at 11310 S. Orange Blossom Trail, Suite 232, Orlando, FL 32837.

_____

**Signature**

Relationship to Entity/Authority to Receive
Service of Process

_____

Date of Signature: _____, 2005

## ACCEPTANCE OF SERVICE

I, **D. C. Offutt, Jr.,** Attorney at Law, practicing with Offutt, Fisher & Nord Law Firm, in

Huntington, West Virginia, being duly authorized, do hereby accept service of the

pleadings issued by the Circuit Court of Putnam County, West Virginia, in the following

lawsuit filed against our client, **Teays Valley Health Services, Inc., d/b/a Putnam**

**General Hospital**.


**Coiner**, Lisa v. John A. King, DO et al
Complaint with Summons
**CA No. 04-C-472**

Date: January 4, 2005

D. C. Offutt, Jr., Esquire
Offutt, Fisher & Nord
P. O. Box 2868
Huntington, WV 25728-2868
Tel: 304-529-2868
WV Bar #2773

# OFFUTT, FISHER & NORD

### ATTORNEYS AT LAW

D. C. Offutt, Jr. †
Michael M. Fisher
Steven K. Nord †‡
Scott W. Andrews†
Cheryl A. Simpson
Stephen S. Burchett †
Perry W. Oxley †‡
Sonja C. Vital †
Scott L. Summers
Jon D. Hoover †
Holly G. DiCocco †
David E. Rich ‡
Robert M. Sellards
Andrea N. Markins
L.R. Sammons, III
Robert H. Akers

812 Quarrier Street, Suite 600
Post Office Box 2833
Charleston, West Virginia 25330-2833

Telephone:  (304) 343-2869
Facsimile:  (304) 343-3053

May 13, 2005

Post Office Box 2868
949 Third Avenue, Suite 300
Huntington, WV 25728-2868

Telephone
(304) 529-2868
-----
Facsimile
(304) 529-2999

† also admitted in KY
‡ also admitted in OH

File No.: 5120.0002

Mr. Donald A. Wright, Clerk
Putnam County Circuit Court
Putnam County Courthouse
3389 Winfield Road
Winfield, West Virginia 25213

Re:  Coiner v. King et al.
Civil Action 04-C-472
Circuit Court of Putnam County, West Virginia

Dear Mr. Wright:

Enclosed, please find **"Acceptance of Service"** for filing in the above styled matter.

Thank you for your assistance in this regard.

Very truly yours,

D. C. Offutt, Jr.

DCO/djv
Enclosure

### OFFUTT, FISHER & NORD

Mr. Donald A. Wright, Clerk
Circuit Clerk of Putnam County
May 13, 2005
Page 2


cc:

Arden J. Curry, II, Esquire
Curry & Tolliver, PLLC
P.O. Box 11866
Charleston, WV 25339
(With Enclosure)

## ACCEPTANCE OF SERVICE

I, **Thomas J. Hurney**, Attorney at Law, practicing with the Law Firm of Jackson Kelly

PLLC, in Charleston, West Virginia, being duly authorized, do hereby accept service of

the pleadings filed in the Circuit Court of Putnam County, West Virginia, in the following

lawsuit filed against our client, **David McNair**.

**Coiner**, Lisa v. John A. King, DO et al
Complaint with Summons
**CA No. 04-C-472**

Date:  January 17, 2005

Thomas J. Hurney, Esquire
Jackson Kelly PLLC
P. O. Box 553
Charleston, WV 25322-0553
Tel: 304-340-1346
WV Bar #1833

S:\Civil_file\s\CARS.1\Pleadings\Hurney Acceptance.doc

18

# STATE OF WEST VIRGINIA 2005 JAN -6 AM 11: 36

## RETURN OF SERVICE

FILED
GERALD A. WRIGHT, CLERK
PUTNAM CO. CIRCUIT COURT

STATE OF WEST VIRGINIA,                                        04-C-472
COUNTY OF KANAWHA , TO WIT:                         COINER v. KING, et al

THIS DAY CAME  DAVID B. HARTSAW , PERSONALLY KNOWN BY ME TO BE A

CREDIBLE PERSON ABOVE THE AGE OF TWENTY ONE YEARS, WHO AFTER BEING FIRST DULY

SWORN, STATES THAT HE SERVED THE WITHIN SUMMONS AND COMPLAINT  ON THE WITHIN

NAMED ROBERT EDWARDS A/K/A BOB EDWARDS  BY DELIVERING TO KATHY LYNN EDWARDS,

WIFE , AT USUAL PLACE OF ABODE ( 2 ASHLAWN DRIVE, CHARLESTON, WV 25303) AND

ADVISED OF THE PURPORT OF THE SUMMONS AND COMPLAINT TO KATHY LYNN EDWARDS,

WIFE , AT USUAL PLACE OF ABODE, BY DELIVERING TO HIM/HER IN PERSON TRUE COPIES ON

THIS THE 19TH DAY OF JANUARY ,2005 IN KANAWHA  COUNTY, WEST VIRGINIA.

                                                         PRIVATE PROCESS SERVER

TAKEN, SUBSCRIBED AND SWORN TO BEFORE ME ON THIS THE  20TH DAY OF JANUARY

, 2005.

                                                         NOTARY PUBLIC

MY COMMISSION EXPIRES: OCTOBER, 26TH, 2013

(SEAL)



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
PAULA J. LOFTUS
LAW OFFICE OF STEPHEN P. SWISHER
1230 OHIO AVENUE
DUNBAR, WV 25064
My commission expires October 26, 2013

## SUMMONS

### CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

LISA COINER, STEPHEN COINER,
and JARROD COINER, a minor under the
Age of 18 years, who sues by his father,
Stephen Coiner,

CIVIL ACTION NO. _04- C-472_

           Plaintiffs,

Vs.

JOHN A. KING, D.O.
DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
   d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.;
HEALTHTRUST, INC. – THE HOSPITAL COMPANY,
   a foreign corporation;
HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
   a foreign corporation;
ROBERT EDWARDS, aka BOB EDWARDS, and
EBI, L. P.,

           Defendants

**To the above-named Defendant:**

      IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon:

               Arden J. Curry, II
               Curry & Tolliver
               P. O. Box 11866
               Charleston, WV 25338

plaintiff's attorney, an answer, including any related counterclaim you may have, to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are required to serve your answer within **30** days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated:_ December     20  , 2004

                             Donald A Wright
                        Clerk of Court     B.m.

*19*

## ACCEPTANCE OF SERVICE

I, **Richard D. Jones**, Attorney at Law, practicing with the Law Firm of Flaherty

Sensabaugh & Bonasso PLLC, in Charleston, West Virginia, being duly authorized, do

hereby accept service of the pleadings filed in the Circuit Court of Putnam County, West

Virginia, in the following lawsuit filed against our client, **HCA Inc., Healthtrust, Inc.—**

**The Hospital Company, and Hospital Corp, LLC.**


**Coiner**, Lisa v. John A. King, DO et al
Complaint with Summons
**CA No. 04-C-472**

Date:  January 27, 2005


Richard D. Jones, Esquire
Flaherty Sensabaugh & Bonasso PLLC
P. O. Box 3843
Charleston, WV 25338-3843
Tel: 304-345-0200
WV Bar #1927

2⁰

## ACCEPTANCE OF SERVICE

I, Neva G. Lusk, Attorney at Law, practicing with Spilman Thomas & Battle Law Firm, in Charleston, West Virginia, being duly authorized, do hereby accept service of the Summons and Complaint issued by the Circuit Court of Putnam County, West Virginia, in the following lawsuit filed against our client, EBI L.P.

**Coiner**, Lisa v. John v. John A. King, DO et al
Complaint with Summons
**CA No. 04-C-472**

Dated: December 29, 2004

_Neva G. Lusk_

Neva G. Lusk, Esquire
Spliman Thomas & Battle
P.O. Box 273
Charleston, WV 25321-0273
Tel:  (304) 340-3866
Fax: (304) 340-3801
WV Bar #2274



## AFFIDAVIT OF SERVICE

**STATE OF FLORIDA,**
**COUNTY OF ORANGE, to-wit:**

JOE PLEASANT, after first being duly sworn, upon his oath deposes and says:

1.     I am an Investigator for Attorneys Legal Service, of Orlando, Florida.

2.     On March 22, 2005, I visited a gated community located in Orlando, Florida and ascertained with the Security Guard that John A. King was registered in the security computer as having access to the address of 10632 Woodchase Circle, Orlando, Florida 32836.

3.     I then went to the address of 10632 Woodchase Circle, Orlando, Florida 32836, and asked for John A. King and was informed by Michael Tanner that he was out of town. I then personally served upon Michael Tanner, husband of Lois Tanner, the summons and complaint in the case of **Lisa Coiner Complaint w/Summons No. 04-C-472,** filed in the Circuit Court of Putnam County, West Virginia.

4.     I further ascertained from Michael Tanner that Lois Tanner was the sister of John A. King and that John A. King had access to the address of 10632 Woodchase Circle, Orlando, Florida 32836.

5.     And further Affiant saith naught.

_____
Joe Pleasant

Taken, subscribed and sworn to before me this _31_ day of _March_, 2005.

My Commission expires _____.

DAVID J. BIDDLE
Notary Public - State of Florida
My Commission Expires May 6, 2007
Commission # DD189413
Bonded By National Notary Assn.

_____
NOTARY PUBLIC

[NOTARY SEAL]

**SUMMONS**

CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

LISA COINER, STEPHEN COINER,
and JARROD COINER, a minor under the
Age of 18 years, who sues by his father,
Stephen Coiner,

CIVIL ACTION NO. __04-C-412__

Plaintiffs,

Vs.

JOHN A. KING, D.O.
DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
  d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.;
HEALTHTRUST, INC. – THE HOSPITAL COMPANY,
  a foreign corporation;
HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
  a foreign corporation;
ROBERT EDWARDS, aka BOB EDWARDS, and
EBI, L. P.,

Defendants

**To the above-named Defendant:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required
to serve upon:

> Arden J. Curry, II
> Curry & Tolliver
> P. O. Box 11866
> Charleston, WV 25338

plaintiff's attorney, an answer, including any related counterclaim you may have, to the complaint filed

against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are

required to serve your answer within **30** days after service of this summons upon you, exclusive of the

day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded

in the complaint and you will be thereafter barred from asserting in another action any claim you may

have which must be asserted by counterclaim in the above-styled civil action.

Dated: __December      20      , 2004__

_Donald A. Wright_
_BM_
Clerk of Court

# IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

LISA COINER, ET AL,

      Plaintiffs,

vs.                          CIVIL ACTION NO. 04-C-472

JOHN A. KING, D.O., ET AL

      Defendants.

## AFFIDAVIT

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA,

    ARDEN J. CURRY II, after being first duly sworn, upon his oath deposes and says as follows:

(1)    I am counsel for the plaintiffs in the above-styled litigation.

(2)    On the 4th day of March 2005, by certified mail, return receipt requested, I forwarded a copy of the Complaint and Summons, and Amended Complaint and Summons in this litigation to John A. King, DO at his address of 11310 South Orange Blossom Trail, Orlando, Florida 32832-9421.

(3)    John A. King has listed the above address as his correct mailing address in (a) pleadings filed in the case of *Cecil Carter and Rita Carter v. John King, et al*, Civil Action No. 03-C-216, filed in the Circuit Court of Putnam County, West Virginia; (b) in pleadings filed in the case of *John A. King, DO v. The State Journal LLC*, Civil Action No. 2:04-01071, filed in the United States District Court for the Southern District of West Virginia, at Charleston; (c) in pleadings filed in the case of *John A. King, DO v. Daily Gazette Company, et al*, Civil Action No. 2:04-cv-01046, filed in the United States District Court for the Southern District of West Virginia, at Charleston; (d) in pleadings filed in the case of *John A. King, DO v. Edgar D.*

*Dawson, M.D.,* Civil Action No. 2:05-cv-00746-RGK-Mc, filed in the United States District Court, Central District of California, Western Division-Los Angeles; and (e) in pleadings filed in the case of *John A. King, DO v. Teays Valley Health Services, Inc., et al,* Civil Action No. 2:05-0463, filed in the United States District Court for the Southern District of West  Virginia, at Huntington.

(4)     On the 8th day of March 2005, Shirley Melendez signed the certified mail return receipt card for the service of the pleadings and summons in this matter.  A copy of the signed return receipt card is attached and made a part of this Affidavit.

(5)     The address of 11310 South Orange  Blossom Trail, Orlando, Florida 32837-9421 is a UPS Store owned by Sam Nompleggi.  On the 14th day of April 2005, Curry & Tolliver PLLC confirmed that Shirley Melendez was employed at this UPS store.

(6)     John A. King authorized the UPS Store owned and operated by Sam Nompleggi to be an authorized agent to receive documents transmitted to King through the United States Mail and otherwise.  Attached to and made a part of this Affidavit is the contract between John A. King and the UPS Store at 11310 South Orange Blossom Trail, Orlando, Florida 32837-9421.

(7)     Service of process in the manner described above complies with West Virginia Rule of Civil Procedure 4(b)(1)(C), in that appropriate service has been made by delivering a copy of the summons and complaint to an agent or attorney in fact authorized by John King's own appointment to receive or accept service on his behalf.

(8)     At the request of Curry & Tolliver PLLC, the  Clerk of the Circuit Court of Putnam County, West Virginia forwarded a copy of the summons and complaints in this litigation, by first class mail, postage prepaid, to John A. King, DO, together with two copies of a Notice and Acknowledgment conforming substantially to Form 14 of the West Virginia Rules of

Civil Procedure, along with a return envelope postage prepaid, addressed back to the Clerk of the Circuit Court of Putnam County, West Virginia.  The records of the Clerk of the Circuit Court of Putnam County, West Virginia, reflect that the pleadings and summons were forwarded to John A. King, DO in the manner described above.

(9)     Service of process in the manner described above complies with the provisions of West Virginia Rule of Civil Procedure 4(b)(1)(E), in that the Clerk has forwarded a copy of the pleadings and summons to John A. King, DO, first class mail, postage prepaid, together with two copies of a Notice and Acknowledgment conforming substantially to Form 14 and a return envelope, postage prepaid, addressed to the Clerk.

(10)    West Virginia Rule of Civil Procedure 4(e)(2) provides that if a plaintiff knows the residence of a defendant upon whom service has been unsuccessfully attempted, as described in Rule 4(e)(1)(E), or when a plaintiff knows the residence of a non-resident defendant which has no appointed or statutory agent or attorney in fact in the State of West Virginia upon whom service may be had, a plaintiff may obtain constructive service of the summons and complaint upon such defendant by the method set forth in West Virginia Rule of Civil Procedure 4(b)(1)(D).

(11)    Service of process in the manner described in paragraphs (2) through (9) above complies with West Virginia Rule of Civil Procedure 4(e)(2) in that the plaintiff knows of the address of John A. King and has obtained constructive service of the pleadings and summons in the manner prescribed in WVRCP 4(b)(1)(D).

(12)    In the case of *United States of America ex rel Jean Loper and John A. King, DO vs. Donalsonville Hospital, Inc., et al*, Civil Action No. 6:01-CV-41 [HL] in the United States District Court for the Middle District of Georgia, Thomasville Division, the deposition of John

A. King, DO was taken on the 8th day of September 2004. In that deposition John A. King was asked where and with whom he resided. King responded, on page 9 of that deposition, that he resided with relatives, including a sister whose name was "Lois Tanner", who resides in Orlando, Florida.

(13)   Curry &  Tolliver PLLC retained the services of an investigator for Attorneys Legal Service of Orlando, Florida in order to determine the correct address for Lois Tanner in Orlando, Florida and to effectuate service of process upon John A. King.  Curry & Tolliver PLLC has filed with the Clerk of the Circuit Court of Putnam County, West Virginia, an Affidavit from Joe Pleasant, an investigator for Attorneys Legal Service, of Orlando, Florida, which reflects that the address of 10632 Woodchase Circle, Orlando, Florida 32836, is the correct residence address for Michael and Lois Tanner. Joe Pleasant then went to the residence address and ascertained through the security officer that John A. King was registered in the security computer as having access to the address of 10632 Woodchase Circle, Orlando, Florida 32836. Joe Pleasant thereafter went to the residence address, asked for John A. King and was informed by Michael Tanner, the husband of Lois Tanner that John A. King was out of town. Joe Pleasant then personally served upon Michael Tanner, husband of Lois Tanner, the pleadings and summons in this litigation.

(14)   Service of process in the manner described above complies with West Virginia Rule of Civil Procedure 4(b)(1)(B), in that a copy of the summons and complaints was delivered to King's dwelling place or usual place of abode to a member of his family above the age of 16, who was informed of the purport of the summons and complaint.

(15)   West Virginia Code § 56-3-33 provides that if a non-resident engages in certain enumerated activities, including "causing tortious injury by an act or omission in this state", then

4

the Secretary of State for the State of West Virginia is deemed to be appointed by the non-resident as his or her agent for the acceptance of service of process. A non-resident includes any person who is not a resident of the state, or a resident who has moved from the state subsequent to engaging in such act or acts. The complaints filed in this litigation allege that John A. King caused tortious injury to the plaintiff through medical malpractice and by other willful, intentional and deliberate acts or omissions which occurred in the State of West Virginia and, more particularly, in Putnam County, West Virginia.

(16)     Pursuant to the provisions of West Virginia Code § 56-3-33, Curry & Tolliver PLLC delivered the original and two copies of both the summons and complaints and the fee required under the West Virginia Code, to the Secretary of State seeking service of process upon John A. King.  Service by the West Virginia Secretary of State under West Virginia Code § 56-3-33 is reflected in the returns provided by the West Virginia Secretary of State to the Clerk of the Circuit Court of Putnam County, West Virginia.

(17)     Service of process in the manner described above complies with the provisions of West Virginia Code § 56-3-33, in that John A. King is a non-resident who caused tortious injury by acts or omissions in this state, and the Secretary of State of the State of West Virginia is deemed to be appointed his agent for service of process.

And further affiant saith naught.

_____
Arden J. Curry, II

Taken, subscribed and sworn to before me this 20th day of June 2005.

My commission expires the 10th day of May 2011.

_Margaret C. Scharf_
NOTARY PUBLIC

[NOTARY SEAL]

OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
MARGARET C. SCHARF
2308 FOREST CIRCLE
SOUTH CHARLESTON, WV 25303-2112
My Commission Expires May 10, 2011

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X _____ ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Shirley Valencia   3/8

1. Article Addressed to:

John A. King
11310 South Orange Blossom Trail
Orlando, FL. 32832-9421

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7003 2260 0004 4472 5798

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

Postage   $   $11.05
Certified Fee   $2.30
Return Receipt Fee (Endorsement Required)   $1.75
Restricted Delivery Fee (Endorsement Required)   $0.00
Total Postage & Fees   $   $37.00

0701
19
Postmark Here
03/04/2005

Sent To  John A. King
Street, Apt No.; or PO Box No.  11310 So. Orangle Blossom Tr
City, State, ZIP+4  Orlando, FL 32832-9421

PS Form 3800, June 2002   See Reverse for Instructions

7003 2260 0004 4472 5798

SENDER: COMPLETE THIS...

- Cor... 3 Items 1, 2, and 3. Also complete
  Item ..., if Restricted Delivery is desired.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

John A. King
11310 South Orange Blossom Trail
Orlando, FL  32832-9421

A. Signature
X _Shirley Melancon_   □ Agent   □ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Shirley Melancon

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:   □ No

3. Service Type
   ☒ Certified Mail   □ Express Mail
   □ Registered   □ Return Receipt for Merchandise
   □ Insured Mail   □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
   (Transfer from service label)

7003 2260 0004 4472 5842

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL₀ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com₀

OFFICIAL USE

| | |
|---|---|
| Postage | $ $15.30 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $19.35 |

0701
19   Postmark
     Here

03/04/2005

Sent To  John A. King
Street, Apt No.;  11310 South Orange Blossom Tr
or PO Box No.
City, State, ZIP+4  Orlando, FL  32832-9421

PS Form 3800, June 2002        See Reverse for Instructions

7003 2260 0004 4472 5842

Jun-28-04 12:10P P.01

United States Postal Service

## Application for Delivery of Mail Through Agent

3 months    BOX# Z32

See Privacy Act Statement on Reverse

1. Date 8/31/02

In consideration of delivery of my or our (firm) mail to the agent named below, the addressee and agent agree: ... the addressee or the ... must not file a change of address order with the Postal Service upon termination of the agency relationship ... to the change of ... (firm) mail to another address is the responsibility of the agent; (3) all mail, delivered to the agency under this authorization mu... be prepaid with new postage when redeposited in the mails; (4) upon request the agent must provide to the postal service all address to which the agency transfers mail; and (5) when any information required on this form changes or becomes obsolete, the addressee must file a revised application with the Commercial Mail Receiving Agency (CMRA).

NOTE: The applicant must execute this form in duplicate in the presence of the agent, his or her authorized employee, or a notary public. The agent retains the original completed signed Form 1583 to the Postal Service and retains a duplicate completed signed copy at the CMRA business location. The CMRA copy of Form 1583 must at all times be available for examination by the postmaster (or designee) and the Postal Inspection Service. The addressee and the agent agree to comply with all applicable postal rules and regulations relative to delivery of mail through an agent. Failure to comply will subject the agency to withholding of mail until corrective action is taken.

This application may be subject to verification procedures by the Postal Service to confirm that the applicant resides or conducts business at the home or business address listed in boxes 8 or 11, and that the identification listed in box 9 is valid.

| | |
|---|---|
| 2. Name In Which Applicant's Mail Will Be Received for Delivery to Agent. (Complete a separate Form 1583 for EACH applicant. Spouses may complete and sign one Form 1583. Two items of valid identification apply to each spouse. Include secondary information for other spouse in appropriate box.) | 3. Address to Be Used for Delivery including ZIP + 4.  Your Name/ Business Name  PMB# 11310 South Orange Blossom Trail #Z32 Orlando, FL 32837 — |
| X Laura Tyndall | |
| X DR. John King | |

4. Applicant Authorizes Delivery to and in Care of (Name, address, and ZIP Code of agent)
Mail Boxes Etc. #1619
11310 South Orange Blossom Trail
Orlando, FL 32832
Authorization included to include Restricted Delivery Mail for the undersigned:

X _____

5. Will This Delivery Address Be Used for Soliciting or Receiving Funds With a Public? (Check one)
☐ Yes   ☒ No

7. Name of Applicant
X Laura Tyndall + DR. John King

8. Home Address (Number, street, city, state, and ZIP + 4)
X PO BOX 308
Groves, TX 77619
Telephone Number ( 409 ) 504-3284

6. Two Types of Identification are Required. One Must Contain a Photograph of the Addressee. Write in Identifying Information, Subject to Verification.
a. Texas Lic. # 9961546)
b.

Acceptable identification includes: driver's license, armed forces, government, or recognized corporate identification card, passport, alien registration card, or other credentials showing the applicant's signature and a serial number or similar information that is traceable to the bearer. A photocopy of your identification may be retained by agent for verification.

10. Name of Firm or Corporation

11. Business Address (Number, street, city, state, and ZIP + 4)

Telephone Number (    )

12. Kind of Business

13. If Applicant is a Firm, Name Each Member Whose Mail is to Be Delivered. (All names listed must have current identification.) A guardian must list the names and ages of minors receiving mail at the address requested.

14. If a CORPORATION, Give Names and Addresses of its Officers

15. If Business Name of The Applicant (Corporation, etc.) Under Which Mail is Registered, Give Name of County and State and Date of Registration.

I agree: The furnishing of false or misleading information on this form or omission of material information may result in criminal sanctions (including fines and imprisonment) and/or civil sanctions (including multiple damages and civil penalties). (18 U.S.C. 1001)

16. Signature of Agent/Notary Public
X _____

PS Form 1583, March 1999

17. Signature of Applicant (If firm or corporation, specify officer or title of person signing.)
X _____

This form is available on www.usps.com

# MAIL BOXES ETC.

MAKING BUSINESS EASIER® WORLDWIDE

## MAILBOX SERVICE AGREEMENT

CUSTOMER NAME: Laura Tyndall
COMPANY:
ADDRESS: P O Box 358 Goshen KY 40231
HOME PHONE: 502-641-2954  WORK PHONE:          FAX:
E-MAIL ADDRESS:                    MAIL BOXES ETC CENTER # : 1065
MAILBOX NUMBER: 232        SIZE OF MAILBOX: 232  P

1) This Mailbox Service Agreement ("Agreement") is made and entered into by the customer identified above ("Customer") for the use of and services related to a mailbox (the "Mailbox") at the Mail Boxes Etc. Center identified above (the "Center") under the terms set forth herein.

2) Customer agrees that Customer will not use the Center premises or any Center services for any unlawful, illegitimate, or fraudulent purpose or for any purpose prohibited by U.S. postal regulations. Customer further agrees that any use of the Mailbox shall be in conformity with all applicable federal, state and local laws. Each individual or entity must complete a separate U.S. Postal Service Form 1583 ("Form 1583") to be authorized to receive mail or packages at the Mailbox. However, spouses may complete one Form 1583, as long as both spouses include their separate information on the Form.

3) This Agreement and Form 1583 shall remain confidential, except that this Agreement and Form 1583 may be disclosed upon request of any law enforcement or other governmental agency, or when legally mandated. Additionally, Customer acknowledges that pursuant to postal regulations the information required to complete Form 1583 may be made available by the U.S. Postal Service to the public if "yes" in block five (5) on Form 1583 is checked. Upon request, Customer agrees to complete all necessary documents, including Form 1583 and any required acknowledgements form relating to service of process. Customer further agrees to sign an updated version of this Agreement and Form 1583 upon request.

4) Possession of the Mailbox key shall be considered valid evidence that the possessor is duly authorized to remove any contents from the Mailbox. In the event of death or incapacity of Customer, the Center will require the appropriate documents from the Probate Court, the executor of the estate, the trustee or other similar person or entity before releasing mail or packages to a requesting party.

5) Customer agrees to pay an initial set-up fee of $10 and a refundable security key deposit of $5 for key charge, as well as applicable monthly service fees. The security/key deposit is refundable upon expiration, cancellation or termination of this Agreement, provided that Customer returns the key, key card and/or other similar device, and pays all sums owed to the Center. Mailbox service fees are all due and payable in advance and Customer agrees that the Center may hold mail and packages pending payment. There will be no pro rations or refund after cancellation of any service. Customer agrees to pay a late fee of $5 if any payment is not received within five (5) days of when due. In the event the Mailbox lock is changed upon the request or fault of Customer, Customer agrees to pay a fee of $10. Mailbox service fees and other related fees stated herein are subject to change. In the event that Customer receives an unreasonable volume of mail or packages at the Mailbox according to the Center's reasonable judgment, the Center may require Customer to upgrade to a larger size mailbox and pay any additional charge. The Center reserves the right to increase the Mailbox service fees in the event that Customer adds additional individuals or entities to the number of those individuals or entities authorized to receive mail and packages at the Mailbox pursuant to Form 1583.

6) Upon expiration, cancellation or termination of this Agreement, the Center will:

a. Re-mail (i.e., forward) Customer's mail for six (6) months, provided Customer pays the postage, packaging material, and forwarding fees in advance. Additionally, Customer must pay a monthly storage fee

©Mail B.E.E.   ...

Revised April 1998

1 of 2



of _____5_____ for month 1, and _____10_____ for months 2 through 6 in advance for the time period that mail is to be forwarded. It is Customer's responsibility to make arrangements with the Center to identity any mail forwarding needs prior to the expiration, cancellation or termination of this Agreement.

b. Discard or destroy any "Unsolicited Mail" (e.g., bulk mail; mail addressed as "occupant" or current resident or similar designations or coupons, advertising or other promotional material) delivered to or remaining at the Center.

c. Retain Customer's mail, other than Unsolicited Mail, at the Center for a period of thirty (30) days from the date of delivery or six (6) months after the expiration, cancellation or termination of this Agreement, whichever comes first, if Customer leaves no forwarding fees or forwarding address. After such time, any mail or package may be discarded or destroyed. In order to pick up any mail or package during the thirty (30) month period Customer must pay a storage fee of _____10_____ per month for the time period in which the Center holds the mail or package(s), plus a service fee of _____5_____ for each time Customer visits the Center to pick up such items.

d. Refuse any package addressed to Customer delivered by any party other than the U.S. Postal Service, such as a commercial courier service.

7) Six (6) months after the expiration, cancellation or termination of this Agreement, the Center m-

a. Refuse any mail or package addressed to Customer and delivered to the Center.

b. Discard or destroy any of Customer's mail or package delivered to or remaining at the Center at such time

8) The term of this Agreement shall be the initial period paid for by Customer and any renewal terms paid for. Customer from time to time. Renewal of this Agreement for additional terms shall be at the Center's sole discretion.

9) Customer agrees that the Center may terminate or cancel this Agreement for good cause at any time by providing Customer thirty (30) days written notice. Good cause shall include but is not limited to: 1) Customer abandons the Mailbox; 2) Customer uses the Mailbox for unlawful, illegitimate or fraudulent purposes; 3) Customer fails to pay monies owed the Center when due; 4) Customer reserves an unreasonable volume of mail or packages; 5) Customer engages in offensive, abusive or disruptive behavior toward other customers of the Center or the Center's employees; and 6) Customer violates any provision of this Agreement. Customer acknowledges that, for the purpose of determining good cause for termination of this Agreement as provided herein, the actions of any person authorized by Customer to use the Mailbox will be attributed to Customer.

10) Any written notice to Customer required or permitted under this Agreement shall be deemed delivered twenty-four (24) hours after placement of such notice in Customer's Mailbox or at the time personally delivered to Customer. In the event of a termination notice based upon abandonment of the Mailbox, notice shall be deemed delivered (a) on the next day after placing in the hands of a commercial courier service or the United States Postal Service for next day delivery, or (b) five (5) days after placement in the United States Mail by Certified Mail, Return Receipt Requested, postage prepaid, and addressed to Customer at Customer's address as set forth in Form 1583, or on the date of actual receipt whichever is earlier.

11) As Customer's authorized agent for receipt of mail, the Center will accept all mail, including registered, insured and certified items. Unless prior arrangements have been made, the Center shall only be obligated to accept mail or packages delivered by commercial courier services which require a signature from the Center as a condition of delivery. Customer must accept and sign for all mail and packages upon the request of the Center. Packages not picked up within _____5_____ days of notification will be subject to a storage fee of _____1.00_____ per day per package, which must be paid before Customer receives the package. In the event Customer refuses to accept any mail or package, the Center may return the mail or package to the sender and Customer will be responsible for any postage or other fees associated with such return. C.O.D. items will be accepted ONLY if prior arrangements have been made and payment in advance is provided to the Center.

12) Customer agrees to protect, indemnify, defend and hold harmless the Center, Mail Boxes Etc. Inc. and their respective affiliates, subsidiaries, parent corporations, franchisees, officers, directors, agents and employees from and

Customer's Initials ___

Rev 4 Jan. 2000

2 of 3

against any and all losses, damages, expenses, claims, demands, liabilities, judgments, settlement amounts, costs and causes of action of every type and character arising out of or in connection with the use or possession of the Mailbox, including, without limitation, any demands, claims and causes of action for personal injury or property damage arising from such use or possession, from failure of the U.S. Postal Service or any commercial courier service to deliver on time or otherwise deliver any items (mail, packages, etc.), from damage to or loss of any package or mail, or to the Mailbox contents by any cause whatsoever, and from any violation by Customer of applicable federal, state or local laws.

13) Customer acknowledges and agrees that the Center is an independently owned and operated franchise of Mail Boxes Etc. USA, Inc. ("Franchisor") and that Franchisor is not responsible for any acts or omissions of its franchisees.

14) CUSTOMER HEREIN AGREES THAT THE TOTAL AMOUNT OF LIABILITY OF THE CENTER AND FRANCHISOR, IF ANY, FOR ANY AND ALL CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL NOT EXCEED $100.00 REGARDLESS OF THE NATURE OF THE CLAIM.
(INITIAL _____)

15) Customer must use the exact mailing address for the Mailbox without modification as set forth in Section three (3) of Form 1583. Mail received by Customer must bear a delivery address that contains at least the following elements, in this order:
  (1) Intended addressee's name or other identification. Examples: Joe Doe or ABC Co.
  (2) "PMB" and number. Example: PMB 334.
  (3) Street number and name or post office box number or rural route
  designation and number. Examples: 10 Main St. or P.O. BOX 34 or RR 1 BOX
  (4) City, state, and ZIP Code (5-digit or ZIP+4) Example: Herndon VA 22071-2716

The Postal Service will return mail without a proper address to the sender endorsed "Undeliverable as Addressed."

16) Delivery by commercial courier services must be made to the Center street address only (and not a "P.O. Box." "P.O. Box" may be used only if it is part of Customer's "Caller Service" (arrangement for delivery of mail through a carrier using a U.S. Postal Service address) address format. In such case, the "PMB" designation must also be used. Upon signing this Agreement, Customer shall provide two forms of valid identification, one of which shall include a photograph. The Agreement may not be amended or modified, except in a writing signed by both parties.

A CUSTOMER SIGNATURE: _____ DATE: 8-30-02

AUTHORIZED CENTER REPRESENTATIVE
SIGNATURE: _____ DATE: 8/30/62
HOW DID CUSTOMER HEAR ABOUT US?

3 of 3



PmD 232





23

# CURRY & TOLLIVER, PLLC
## LAWYERS

100 KANAWHA BOULEVARD, WEST
CHARLESTON, WEST VIRGINIA 25302

P.O. BOX 11866
CHARLESTON, WV 25339
TEL: (304) 343-7200
FAX: (304) 353-0350

JACK D. TOLLIVER, M.D., J.D. †
ARDEN J. CURRY
ARDEN J. CURRY, II †
DAVID K. SCHWIRIAN †
SUSAN CURRY BRASSELLE †‡

WRITER'S DIRECT
E-MAIL ADDRESS: JOHN@CURRYTOLLIVER.COM
FAX NUMBER: (304) 353-0344

June 23, 2005

**FILED**
**JUN 2 3 2005**
**PUTNAM COUNTY**
**CIRCUIT COURT**

Donald A. Wright, Clerk
Putnam County Circuit Court
Putnam County Courthouse
3389 Winfield Road
Winfield, WV 25213

Re:  **CA 04-C-472**
     **Lisa Coiner**

Dear Mr. Wright:

Pursuant to West Virginia Rule of Civil Procedure 4(d)(1)(E), enclosed you will find (1) two copies of a Notice and Acknowledgment addressed to defendant John A. King, DO, (2) a copy of the Complaint and Summons filed in the above-styled civil action, and (3) our firm's check payable to you in the amount of $10.00.   The check is payment for mailing the Notice/Acknowledgment and Complaint and Summons by **certified mail, return receipt requested, restricted delivery to addressee.**    I am also enclosing typed certified mail documents for your convenience.

Please accept my thanks for your kind assistance in this matter.

Yours truly,

Arden J. Curry, II

AJC,II/mcs
Enclosures

† Also Admitted in Kentucky
‡ Also Admitted in Ohio

S:\Cli_files\COIN,1\2005con\Lt\31.doc

24

2005 JUN 27 PM 1: 15

DONAL _ WRIGHT, CLERK
PUTNAM CIRCUIT COURT



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL

| | |
|---|---|
| Postage | $ |
| Certified Fee | 2.30 |
| Return Receipt Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | 3.50 |
| Total Posta | |

WINFIELD WV 25213
Postmark
Here
27
2005
USPS

Sent To    John A. King, DO
Street, Apt. N    11310 S. Orange Blossom Trail
or PO Box N    Suite 232
City, State, Z    Orlando, FL 32832-9421

PS Form 3800, June 2002                    See Reverse for Instructions

**IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA**

2005 JUN 27   AM 9: 43

LISA COINER,

              Plaintiff,

Vs.                           **CIVIL ACTION NO. 04-C-472**

DONAL...   WRIGHT, CLERK
PUTNAM...   CIRCUIT COURT

JOHN A. KING, DO, ET AL

              Defendants.

### ORDER OF PUBLICATION

The object of each of the above-styled civil actions is to obtain judgment against the named defendants for injuries suffered by each plaintiff as a result of medical malpractice and other common law torts. It appearing by affidavit filed in each action that said **JOHN A. KING, DO** is a non-resident of the State of West Virginia, it is

ORDERED that **JOHN A. KING, DO** do appear and serve upon ARDEN J. CURRY II, attorney for each plaintiff named above, whose address is Post Office Box 2786, Charleston, West Virginia 25530-2786, an answer or other defense to each complaint filed in the above actions on or before August 15, 2005, otherwise judgment by default will be taken against him at any time thereafter.

A copy of the complaints can be obtained from the undersigned Clerk at his office located at 3389 Winfield Road, Winfield, West Virginia 25213, in said County and State.

ENTERED by the Clerk of said Court this _____ day of June 2005.

                         Teste: _____

                                    *Clerk of said C ourt*

                         By: _____

                                      *His Deputy*

26

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

LISA COINER, STEPHEN COINER,
and JARROD COINER, a minor under the
age of 18 years, who sues by his father,
STEPHEN COINER,

                **Plaintiffs,**

**v.**                                        **CIVIL ACTION NO. 04-C-472**

JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.; HEALTHTRUST, INC. -
THE HOSPITAL COMPANY, a Foreign
Corporation; HOSPITAL CORP, L.L.C,
WRIGHT MEDICAL TECHNOLOGY, INC.,
a foreign corporation, ROBERT EDWARDS,
aka BOB EDWARDS, and EBI L.P.,

                **Defendants.**

FILED
2005 JUN 30  AM 11: 10
DONALD A. WRIGHT, CLERK
PUTNAM CO. CIRCUIT COURT

## ANSWER AND CROSS-CLAIM OF DEFENDANT, TEAYS VALLEY HEALTH SERVICES, INC. d/b/a PUTNAM GENERAL HOSPITAL TO THE COMPLAINT

    COMES NOW Defendant, Teays Valley Health Services, Inc. ("Teays Valley") d/b/a

Putnam General Hospital ("PGH"), by counsel, and submits the following as its Answer to

Plaintiffs' Complaint:

### FIRST DEFENSE

    The Complaint fails to state a claim upon which relief can be granted.  Therefore, the

claims against this Defendant should be dismissed.

### SECOND DEFENSE

    1. Answering Paragraph 1 of the Complaint, Defendant admits that John A. King,

D.O., David McNair and certain PGH employees provided medical care to Plaintiff Lisa

Coiner as reflected in her PGH medical records. Defendant is without knowledge or information sufficient to admit or deny that Plaintiff Lisa Coiner was a resident and citizen of the State of West Virginia at all times relevant to the allegations contained in the Complaint. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

2. Answering Paragraph 2 of the Complaint, Defendant admits that John A. King, D.O. was an osteopathic physician who practiced at PGH from October 30, 2002 until his privileges were suspended on June 5, 2003. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

3. Answering Paragraph 3 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

4. Answering Paragraph 4 of the Complaint, Defendant admits that at all times relevant to the allegations set forth in the Complaint Teays Valley owned and operated PGH in Putnam County, West Virginia. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

5. Answering Paragraph 5 of the Complaint, Defendant admits that at all times relevant to the allegations set forth in the Complaint Teays Valley was an indirect subsidiary of HCA Inc. ("HCA"). Defendant denies the remaining allegations contained therein and demands strict proof thereof.

6. Answering Paragraph 6 of the Complaint, Defendant admits that Healthtrust, Inc. – The Hospital Company ("Healthtrust") is a Delaware corporation. Defendant further admits that HCA owns all of the outstanding common stock of Healthtrust, which in turn is the sole member of Hospital Corp, LLC ("Hospital Corp."), which in turn owns all of the

outstanding common stock of Teays Valley. Defendant further admits that Healthtrust does not operate businesses or have employees. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

7. Answering Paragraph 7 of the Complaint, Defendant admits that Hospital Corp. is a limited liability company that owns all of the outstanding common stock of Teays Valley; and that Hospital Corp. does not operate businesses or have employees. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

8. Answering Paragraph 8 of the Complaint, Defendant admits that Dr. King performed the procedures reflected in Lisa Coiner's PGH medical records. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

9. Answering Paragraph 9 of the Complaint, Defendant admits that Teays Valley employed David McNair as a surgical technologist from November 13, 2002 until he resigned on July 24, 2003. The remaining allegations contained in Paragraph 9 of the Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the remaining allegations and demands strict proof thereof.

10. Answering Paragraph 10 of the Complaint, Defendant admits that Mr. McNair and other health care providers assisted Dr. King while Dr. King performed the operative procedures set forth in Paragraph 8 of the Complaint. Defendant also admits that the operative report dictated by Dr. King lists Mr. McNair as a physician assistant or orthopedic physician assistant although he was not employed in that capacity by this Defendant. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

11.  Answering Paragraph 11 of the Complaint, Defendant admits that Wright Medical Technology, Inc. sold or supplied medical products, equipment, and devices, including MIG and Allomatrix, to PGH. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein concerning Wright Medical as a foreign corporation and, therefore, denies the same and demands strict proof thereof. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

12.  Answering Paragraph 12 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

13.  Answering Paragraph 13 of the Complaint, Defendant admits that EBI L.P. sold or supplied medical products, equipment, and devices, including bone stimulators and the EBI ionic spacer, to PGH. Defendant lacks sufficient information or knowledge to admit or deny that EBI L.P. was a foreign corporation. Defendant denies the remaining allegations contained in Paragraph 13 of the Complaint and demands strict proof thereof.

14.  Answering Paragraph 14 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 13 of the Complaint as if set forth fully herein.

15.  Answering Paragraph 15 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

16.  Answering Paragraph 16 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

17.  Answering Paragraph 17 (a-f) of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

OFFUTT,
FISHER & NORD
ATTORNEYS & COUNSELLORS

4

18.  Answering Paragraph 18 of the Complaint, Defendant can neither admit nor deny the allegations contained therein as the allegations simply refer to the Notice of Claim and Screening Certificates of Merit.  To the extent, the allegations incorporate the allegations contained within such documents, Defendant denies the allegations contained therein and demands strict proof thereof.

19.  Answering Paragraph 19 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

20.  Answering Paragraph 20 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

21.  Answering Paragraph 21 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

22.  Answering Paragraph 22 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

23.  Answering Paragraph 23 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

24.  Answering Paragraph 24 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

25.  Answering Paragraph 25 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 24 of the Complaint as if set forth fully herein.

26.  Answering Paragraph 26 of the Complaint, Defendant admits the allegations contained therein.

27.  Answering Paragraph 27 of the Complaint, Defendant admits the allegations contained therein.

28. Answering Paragraph 28 (a-p) of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

29. Answering Paragraph 29 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

30. Answering Paragraph 30 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

31. Answering Paragraph 31 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

32. Answering Paragraph 32 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

33. Answering Paragraph 33 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 32 of the Complaint as if set forth fully herein.

34. Answering Paragraph 34 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

35. Answering Paragraph 35 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

36. Answering Paragraph 36 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

37. Answering Paragraph 37 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

38. Answering Paragraph 38 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

39. Answering Paragraph 39 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

40. Answering Paragraph 40 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

41. Answering Paragraph 41 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

42. Answering Paragraph 42 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

43. Answering Paragraph 43 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

44. Answering Paragraph 44 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

45. Answering Paragraph 45 (a-b) of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

46. Answering Paragraph 46 of the Complaint, Defendant denies that Mr. McNair performed a surgical procedure on the Plaintiff. As the remainder of the allegations contained in Paragraph 46 of the Complaint do not pertain to this Defendant, no response is required. To the extent a response is required, Defendant denies the same and demands strict proof thereof.

47. Answering Paragraph 47 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

48. Answering Paragraph 48 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 47 of the Complaint as if set forth fully herein.

49. Answering Paragraph 49 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

50. Answering Paragraph 50 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

51.  Answering Paragraph 51 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

52.  Answering Paragraph 52 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

53.  Answering Paragraph 53 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

54.  Answering Paragraph 54 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

55.  Answering Paragraph 55 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

56.  Answering Paragraph 56 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

57.  Answering Paragraph 57 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

58.  Answering Paragraph 58 of the Complaint, Defendant denies that Mr. McNair performed surgery on the Plaintiff.    As the remainder of the allegations contained in

Paragraph 58 of the Complaint do not pertain to this Defendant, no response is required. To the extent a response is required, this Defendant denies the same and demands strict proof thereof.

59. Answering Paragraph 59 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

60. Answering Paragraph 60 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

61. Answering Paragraph 61 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

62. Answering Paragraph 62 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

63. Answering Paragraph 63 of the Complaint, as the allegations contained therein do not pertain to this Defendant, no response is required. To the extent a response is required, Defendant denies the same and demands strict proof thereof.

64. Answering Paragraph 64 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 63 of the Complaint as if set forth fully herein.

65. Answering Paragraph 65 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

66. Answering Paragraph 66 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 65 of the Complaint as if set forth fully herein.

67. Answering Paragraph 67 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

68. Answering Paragraph 68 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

69. Answering Paragraph 69 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

70. Answering Paragraph 70 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 69 of the Complaint as if set forth fully herein.

71. Answering Paragraph 71 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

72. Answering Paragraph 72 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 71 of the Complaint as if set forth fully herein.

73. Answering Paragraph 73 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

74. Answering Paragraph 74 of the Complaint inadvertently misnumbered as Paragraph 67 of Count X of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

75. Answering Paragraph 75 of the Complaint inadvertently misnumbered as Paragraph 68 of Count X of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

76. Answering Paragraph 76 of the Complaint inadvertently misnumbered as Paragraph 69 of Count X of the Complaint, Defendant denies that any entity or individual sold or supplied products and medical devices to Mr. McNair. Defendant also denies that

Mr. McNair performed a surgical procedure on the Plaintiff. As the remaining allegations contained in Paragraph 69 of Count X of the Complaint do not pertain to this Defendant, no response is required. To the extent a response is required, Defendant denies the same and demands strict proof thereof.

77.    Answering Paragraph 77 of the Complaint inadvertently misnumbered as Paragraph 70 of Count XI of the Complaint, Defendant re-asserts its answers and defenses to all previous Paragraphs of the Complaint as if set forth fully herein.

78.    Answering Paragraph 78 of the Complaint inadvertently misnumbered as Paragraph 71 of Count XI of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

79.    Answering Paragraph 79 of the Complaint inadvertently misnumbered as Paragraph 72 of Count XII of the Complaint, Defendant re-asserts its answers and defenses to all previous Paragraphs of the Complaint as if set forth fully herein.

80.    Answering Paragraph 80 of the Complaint inadvertently misnumbered as Paragraph 73 of Count XII of the Complaint, Defendant admits that Teays Valley is an indirect, wholly owned subsidiary of HCA, and that its original Articles of Incorporation (which were filed prior to Teays Valley becoming an indirect, wholly owned subsidiary of HCA) indicated that its principal place of business was One Park Plaza, Nashville, Tennessee 37203; and further that this is currently the location of the corporate headquarters of HCA. Defendant further admits that the Bylaws of the Board of Trustees of the Hospital in effect in 2003, used the words "local advisory board" in one portion of the Bylaws to describe the Board of Trustees of the Hospital. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

81.    Answering Paragraph 81 of the Complaint inadvertently misnumbered as Paragraph 74 of Count XII of the Complaint, Defendant admits that HCA owns all of the outstanding common stock of Healthtrust, which in turn is the sole member of Hospital Corp., which in turn owns all of the outstanding common stock of Teays Valley.  The Defendant further admits that Healthtrust, Hospital Corp. and HCA do not operate businesses or have employees.  Defendant further admits that Teays Valley has employees.  Defendant denies the remaining allegations contained therein and demands strict proof thereof.

82.    Answering Paragraph 82 of the Complaint inadvertently misnumbered as Paragraph 75 of Count XII of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

83.    Answering Paragraph 83 of the Complaint inadvertently misnumbered as Paragraph 76 of Count XII of the Complaint, Defendant admits that an unaudited financial statement for Teays Valley reflecting a net worth of $16,186,146 as of September 30, 2004, and a pretax loss of $769,228 for the 9 months ending September 30, 2004, was attached to an affidavit submitted in support of a motion to dismiss and supporting memorandum filed by HCA, Healthtrust and Hospital Corp. in litigation styled Civil Action No. 04-C-649; *B.R. v. Teays Valley Health Services, Inc. d/b/a Putnam General Hospital and Hospital Corporation of America*, in the Circuit Court of Kanawha County, West Virginia.  Defendant denies the remaining allegations contained therein and demands strict proof thereof.

84.    Answering Paragraph 84 of the Complaint inadvertently misnumbered as the second Paragraph 74 of Count XII of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

OFFUTT,
FISHER & NORD
ATTORNEYS & COUNSELLORS

13

85.   Answering Paragraph 85 of the Complaint inadvertently misnumbered as Paragraph 75 of Count XIII of the Complaint, Defendant re-asserts its answers and defenses to all previous Paragraphs of the Complaint as if set forth fully herein.

86.   Answering Paragraph 86 (a-f) of the Complaint inadvertently misnumbered as Paragraph 76 (a-f) of Count XIII of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

87.   Answering Paragraph 87 of the Complaint inadvertently misnumbered as Paragraph 77 of Count XIII of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

88.   Answering Paragraph 88 of the Complaint inadvertently misnumbered as Paragraph 78 of Count XIII of the Complaint, Defendant admits that one of its indirectly wholly owned subsidiaries, Healthcare Indemnity, Inc., provides insurance to HCA's operating subsidiaries.  Defendant denies the remaining allegations contained therein and demands strict proof thereof.

89.   Answering Paragraph 89 of the Complaint inadvertently misnumbered as Paragraph 79 of Count XIII of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

90.   Answering Paragraph 90 of the Complaint inadvertently misnumbered as Paragraph 80 of Count XIII of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

91.   Answering Paragraph 91 of the Complaint inadvertently misnumbered as Paragraph 81 of Count XIV of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

92.    Answering Paragraph 92 of the Complaint inadvertently misnumbered as Paragraph 82 of Count XIV of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

93.    Answering Paragraph 93 of the Complaint inadvertently misnumbered as Paragraph 83 of Count XIV of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

94.    Answering Paragraph 44 of the Complaint inadvertently misnumbered as Paragraph 84 of Count XIV of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

95.    To the extent that any allegation in the Complaint is not specifically admitted herein, it is denied.

### THIRD DEFENSE

Should the evidence so indicate, Defendant will assert that the injuries complained of by Plaintiffs were the result of an underlying medical condition, medical process, or an act of God and were not the result of any negligent act or omission by this Defendant; therefore, the Complaint should be dismissed against it.

### FOURTH DEFENSE

Defendant asserts all the protections, limitations, and defenses contained in the Medical Professional Liability Act, contained in West Virginia Code § 55-7(b)-1 *et seq*.

### FIFTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the negligence of the Plaintiff, Lisa Coiner, equaled or exceeded the negligence, if any, of this Defendant. Therefore, the Complaint is barred by the doctrine of comparative negligence.    In the

alternative, any judgment thereon should be reduced by Plaintiff's percentage of contributory negligence.

## SIXTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the Plaintiff, Lisa Coiner, assumed the risk of her injuries. Therefore, Plaintiff's claims are barred by the doctrine of assumption of risk or, alternatively, any award to her should be reduced by her comparative assumption of risk.

## SEVENTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the Plaintiffs' claims are barred by the applicable statute of limitations and/or the equitable doctrine of laches.

## EIGHTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the Plaintiffs' injuries were proximately caused by the acts or omissions of others, negligent or otherwise, of whom this Defendant exercises no control and for whose acts or omissions it is not responsible.

## NINTH DEFENSE

Defendant specifically denies the agency relations alleged in the Complaint and demands strict proof thereof.

## TENTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the Plaintiffs failed to mitigate their damages.

## ELEVENTH DEFENSE

Plaintiffs cannot establish a claim for punitive damages against this Defendant. As such, Plaintiffs' claim for punitive damages should be dismissed against this Defendant.

### TWELFTH DEFENSE

Plaintiffs' claim for punitive damages violates the Due Process Clauses of the United States Constitution and the West Virginia Constitution and, therefore, should be dismissed.

### THIRTEENTH DEFENSE

Defendant neither caused nor contributed to Plaintiffs' alleged injuries and damages.

### FOURTEENTH DEFENSE

Defendant breached no duties owed to the Plaintiffs.

### FIFTEENTH DEFENSE

John A. King, D.O. was insured during the entire period that he had privileges at Putnam General Hospital and, therefore, Putnam General Hospital cannot be held vicariously liable for any of Dr. King's alleged wrongful acts or omissions.

### SIXTEENTH DEFENSE

Defendant hereby adopts and incorporates all defenses asserted by other defendants to this action.

### SEVENTEENTH DEFENSE

With the exception of the Negligent Credentialing, Privileging, Recruitment, Hiring, Supervision and Retention claim, Plaintiffs failed to comply with the pre-filing requirements of West Virginia Code § 55-7B-6, and therefore, all other claims should be dismissed.

### EIGHTEENTH DEFENSE

Plaintiffs' negligent credentialing and privileging claim is barred by the Health Care Quality Improvement Act.

## NINETEENTH DEFENSE

Defendant reserves the right to amend, expand, alter, or enlarge its Answer to the Complaint at anytime it may be so advised, so as to rely upon defenses disclosed prior to or incident to trial.

## CROSS-CLAIM AGAINST CO-DEFENDANTS

COMES NOW Defendant/Cross-Claim Plaintiff, Teays Valley Health Services, Inc. d/b/a Putnam General Hospital, by counsel, pursuant to Rule 13(g) of the West Virginia Rules of Civil Procedure, and without waiving the defenses asserted in its Answer above, but in the alternative, states as follows for its Cross-Claim against Co-Defendants John A. King, D.O. ("Dr. King"), Wright Medical Technology, Inc. ("Wright Medical"), Robert Edwards, aka Bob Edwards ("Mr. Edwards"), and EBI L.P. ("EBI") (collectively "Co-Defendants"):

1.     In this litigation, the Plaintiffs seek to recover damages against the Defendants under various theories, including but not limited to, medical malpractice, civil conspiracy, intentional and negligent infliction of emotional distress, tort of outrage, fraud and deceit, and joint venture/joint enterprise.

2.     Co-Defendants Dr. King, Wright Medical, Mr. Edwards and EBI individually and/or collectively committed wrongful acts, negligent or otherwise, against the Plaintiffs which caused or contributed to any injuries and damages sustained by the Plaintiffs.

3.     Teays Valley committed no wrongful acts, negligent or otherwise, against the Plaintiffs.

4.     If it is determined in this litigation that Teays Valley is liable for damages to the Plaintiffs, which liability is expressly denied, then Teays Valley is entitled to be

OFFUTT,
FISHER & NORD
ATTORNEYS & COUNSELLORS

18

indemnified by each of the Co-Defendants for any such liability or, in the alternative, to recover a pro rata share of the amount of said judgment from each of the Co-Defendants by way of contribution.

**WHEREFORE**, Defendant Teays Valley Health Services, Inc. d/b/a Putnam General Hospital, demands that the Complaint filed herein against it be dismissed, with prejudice, and that it be awarded its costs incurred in the defense of this claim, including reasonable attorneys' fees.

Further, Defendant/Cross-Claim Plaintiff, Teays Valley Health Services, Inc. moves the Court for a judgment against John A. King, D.O., Wright Medical Technology, Inc., Robert Edwards, aka Bob Edwards, and/or EBI L.P., jointly and severally, in the amount of any judgment rendered for the Plaintiffs against Teays Valley in this action for such costs and expenses incurred in the defense thereof, including reasonable attorneys' fees.

## DEFENDANT DEMANDS A TRIAL BY JURY

**TEAYS VALLEY HEALTH SERVICES, INC. d/b/a PUTNAM GENERAL HOSPITAL**

**BY COUNSEL,**

D.C. Offutt, Jr., Esquire (WV #2773)
Michael M. Fisher, Esquire (WV #4353)
*Offutt, Fisher & Nord*
812 Quarrier Street, Suite 600
Post Office Box 2833
Charleston, West Virginia
Telephone:  (304) 343-2869
Facsimile:  (304) 343-3053

and

John T. Jessee, Esquire (WV #1885)
**LeClair Ryan, A Professional Corporation**
1800 Wachovia Tower
Drawer 1200
Roanoke, Virginia 24006
Telephone:  (540) 510-3018
Facsimile:  (540) 510-3050

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

LISA COINER, STEPHEN COINER,
and JARROD COINER, a minor under the
age of 18 years, who sues by his father,
STEPHEN COINER,

    **Plaintiffs,**

**v.**             **CIVIL ACTION NO. 04-C-472**

JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.; HEALTHTRUST, INC. -
THE HOSPITAL COMPANY, a Foreign
Corporation; HOSPITAL CORP, L.L.C,
WRIGHT MEDICAL TECHNOLOGY, INC.,
a foreign corporation, ROBERT EDWARDS,
aka BOB EDWARDS, and EBI L.P.,

    **Defendants.**

### CERTIFICATE OF SERVICE

   I, Michael M. Fisher, Esquire, counsel for Teays Valley Health Services, Inc. d/b/a

Putnam General Hospital, do hereby certify that a true and exact copy of the foregoing

**"Answer and Cross-Claim of Defendant, Teays Valley Health Services, Inc. d/b/a**

**Putnam General Hospital to the Complaint"** has been served upon counsel of record, by

depositing same into the United States Mail, postage pre-paid, this _29th_ day of June, 2005,

addressed to the following:

      Arden J. Curry, II Esquire
      Curry & Tolliver, PLLC
      P.O. Box 11866
      Charleston, West Virginia 25338
      *Counsel for Plaintiff*

John A. King, D.O.
11310 S. Orange Blossom Trail, Suite 232
Orlando, Florida 32837-9421
        *Pro Se*

Thomas C. Hurney, Jr., Esquire
Jackson Kelly PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, WV 25322
        *Counsel for David McNair*

Richard D. Jones, Esquire
Flaherty Sensabaugh & Bonasso PLLC
P.O. Box 3843
Charleston, West Virginia 25338-3843
        *Counsel for HCA, Inc., Healthtrust, Inc.-*
        *The Hospital Company, and Hospital Corp. L.L.C.*

Stephen B. Farmer, Esquire
Farmer Cline & Campbell
P.O. Box 3842
Charleston, West Virginia 25338
        *Counsel for Wright Medical and Robert Edwards aka*
        *Bob Edwards*

Matthew A. Taylor, Esquire
Duane Morris
One Liberty Place
Philadelphia, Pennsylvania 19103-7396
        *Counsel for Wright Medical and Robert Edwards aka*
        *Bob Edwards*

Neva G. Lusk, Esquire
Spilman Thomas & Battle
P.O. Box 273
Charleston, West Virginia 25321-0273
        *Counsel for EBI L.P.*

Michael M. Fisher, Esquire (WV #4353)

# OFFUTT, FISHER & NORD

### ATTORNEYS AT LAW

812 Quarrier Street, Suite 600
Post Office Box 2833
Charleston, West Virginia 25330-2833

Telephone:  (304) 343-2869
Facsimile:  (304) 343-3053

June 29, 2005

D. C. Offutt, Jr. †
Michael M. Fisher
Steven K. Nord †‡
Scott W. Andrews†
Cheryl A. Simpson
Stephen S. Burchett †
Perry W. Oxley †‡
Sonja C. Vital †
Scott L. Summers
Jon D. Hoover †
Holly G. DiCocco †
David E. Rich ‡
Robert M. Sellards
Andrea N. Markins
L.R. Sammons, III
Robert H. Akers

† also admitted in KY
‡ also admitted in OH

Post Office Box 2868
949 Third Avenue, Suite 300
Huntington, WV 25728-2868

Telephone
(304) 529-2868
-----
Facsimile
(304) 529-2999

File No.: 5120-0002

Donald W. Wright, Clerk
Circuit Court of Putnam County
3389 Winfield Road
Winfield, West Virginia 25213

Re:  Lisa Coiner and Stephen Coiner v. John A. King
Civil Action No.: 04-C-472
Circuit Court of Putnam County, West Virginia

Dear Clerk Wright:

Enclosed for filing, please find the original **"Motion to Dismiss"** as well as the original **"Answer and Cross-Claim of Defendant, Teays Valley Health Services, Inc. d/b/a Putnam General Hospital to the Complaint"** in connection with the above-referenced matter. A copy of these documents has this day been sent to counsel of record via first-class mail.

If you have any questions or desire additional information, please feel free to contact me at any time. Thank you for your time and cooperation in this matter.

Sincerely,

Michael M. Fisher

MMF.clw
Enclosures

## OFFUTT, FISHER & NORD

Donald W. Wright, Clerk
Circuit Court of Putnam County
June 29, 2005
Page 2


cc:

John Jessee, Esquire
Powell Leitch, II, Esquire
*LeClair Ryan Flippin Densmore*
1800 Wachovia Tower
Drawer 1200
Roanoke, Virginia 24006
(With Enclosures)


Arden J. Curry, Esquire
*Curry & Tolliver, PLLC*
Post Office Box 11866
Charleston, West Virginia 25338
(With Enclosures)


Thomas C. Hurney, Jr., Esquire
*Jackson Kelly PLLC*
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
(With Enclosures)


Richard D. Jones, Esquire
*Flaherty, Sensabaugh & Bonasso PLLC*
Post Office Box 3843
Charleston, West Virginia 25338
(With Enclosures)


Stephen B. Farmer, Esquire
*Farmer Cline & Cambell*
Post Office Box 3842
Charleston, West Virginia 25338
(With Enclosures)


John A. King, D.O.
11310 S. Orange Blossom Trail, Suite 232
Orlando, Florida 32837
(With Enclosures)

**IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA**

LISA COINER, STEPHEN COINER,
and JARROD COINER, a minor under the age
of 18 years, who sues by his father,
STEPHEN COINER

        Plaintiff,

vs.                                                    CIVIL ACTION NO. 04-C-472

JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.; HEALTHTRUST, INC. –
THE HOSPITAL COMPANY, a Foreign
Corporation; HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
a foreign corporation, ROBERT EDWARDS,
aka BOB EDWARDS, and EBI L.P.

        Defendants.

## DEFENDANT EBI, L.P.'S ANSWER TO PLAINTIFFS' COMPLAINT AND CROSS-CLAIM OF EBI, L.P.

### Preface to Complaint

With respect to the allegations contained in the Plaintiffs' "Preface to Complaint," EBI, L.P. ("EBI") admits that it received a Notice of Claim and Certificates of Merit regarding Plaintiff Lisa Coiner. EBI admits that it did not demand pre-suit mediation and admits that more than thirty (30) days lapsed between service of the Notice of Claim and Certificates of Merit and service of the Plaintiffs' Complaint on EBI. EBI denies any and all assertions or allegations against EBI as stated in the Notice of Claim and/or Certificates of Merit.

### COUNT I
### General Allegations

1. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of Plaintiffs' Complaint.

2. Upon information and belief, EBI admits the allegations contained in paragraph 2.

3. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

4. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 and, therefore, denies the same.

5. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 and, therefore, denies the same.

6. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 and, therefore, denies the same.

7. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 and, therefore, denies the same.

8. EBI admits that it filled an order for an EBI Ionic® Spacer, which medical device King utilized in the Plaintiff's surgical procedure. Upon information and belief, EBI denies that it provided a stimulator for King's use on Plaintiff. EBI is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 8 and, therefore, denies the same.

9. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 and, therefore, denies the same.

10. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 and, therefore, denies the same.

11. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 and, therefore, denies the same.

12. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 and, therefore, denies the same.

13. EBI admits that it is a foreign company and that it sold and supplied to Teays Valley certain medical devices, including, but not limited to bone stimulators and Ionic® Spacers, and that King ordered devices that EBI sold to Teays Valley for use by King. EBI denies the remaining allegations contained in paragraph 13.

**COUNT II**
**Medical Malpractice**

14. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

15. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 and, therefore, denies the same.

16. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 and, therefore, denies the same.

17. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17, subparts (a) through (f), and, therefore, denies the same.

18. Paragraph 18 does not state an assertion and requires neither an admission nor a denial. However, EBI denies all assertions, allegations, and suggestions contained in the referenced Notice of Claim and/or Certificates of Merit insofar as they relate to EBI.

19. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 and, therefore, denies the same.

20. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 and, therefore, denies the same.

21. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 and, therefore, denies the same.

22. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 and, therefore, denies the same.

23. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 and, therefore, denies the same.

24. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 and, therefore, denies the same.

## COUNT III
### Negligent Credentialing, Privileging Recruitment, Hiring, Supervision and Retention

25. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

26. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 and, therefore, denies the same.

27. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 and, therefore, denies the same.

28. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28, subparts (a) thought (p), and, therefore, denies the same.

29. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 and, therefore, denies the same.

30. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 and, therefore, denies the same.

31. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 and, therefore, denies the same.

32. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 and, therefore, denies the same.

## COUNT IV
## Wright Medical and Edwards

33. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

34. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 and, therefore, denies the same.

35. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 and, therefore, denies the same.

36. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 and, therefore, denies the same.

37. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 and, therefore, denies the same.

38. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 and, therefore, denies the same.

39. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 and, therefore, denies the same.

40. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 and, therefore, denies the same.

41. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 and, therefore, denies the same.

42. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 and, therefore, denies the same.

43. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 and, therefore, denies the same.

44. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 and, therefore, denies the same and demands strict proof thereof.

45. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45, subparts (a) and (b), and, therefore, denies the same.

46. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 and, therefore, denies the same.

47. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47 and, therefore, denies the same.

### COUNT V
### EBI, L.P.

48. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

49. EBI denies the allegations contained in paragraph 49.

50. EBI denies the allegations contained in paragraph 50.

51. EBI denies the allegations contained in paragraph 51.

52. The allegations contained in paragraph 52 state a legal conclusion to which no responsive pleading is required. To the extent a response is required, EBI denies the allegations contained in paragraph 52.

53. EBI denies the allegations contained in paragraph 53.

54. EBI denies the allegations contained in paragraph 54.

55. The allegations contained in paragraph 55 state a legal conclusion to which no responsive pleading is required. To the extent a response is required, EBI denies the allegations contained in paragraph 55.

56. EBI denies the allegations contained in paragraph 56.

57. EBI denies the allegations contained in paragraph 57.

58. EBI admits that it was aware of King's use of Allomatrix on some patients, that at times King decided in his medical judgment not to use autogenous bone graft, and that King was using spinal stimulators on some patients. EBI denies the remaining allegations contained in paragraph 58.

59. EBI denies the allegations contained in paragraph 59.

60. EBI denies the allegations contained in paragraph 60.

## COUNT VI
### Trespass, Assault and Battery

61. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

62. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62 and, therefore, denies the same.

63. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63 and, therefore, denies the same.

## COUNT VII
### Civil Conspiracy

64. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

65. EBI denies the allegations contained in paragraph 65.

7

## COUNT VIII
## Intentional and Negligent Infliction of Emotional Distress

66. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

67. EBI denies the allegations contained in paragraph 67.

68. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 and, therefore, denies the same.

69. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 and, therefore, denies the same.

## COUNT IX
## Tort of Outrage

70. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

71. EBI denies the allegations contained in paragraph 71.

## COUNT X
## Fraud and Deceit

72. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

73. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 and, therefore, denies the same.

67. [sic][1] EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67 and, therefore, denies the same.

---

[1] The numbering in Plaintiffs' Complaint is inconsistent and repetitive. A second paragraph numbered as 67 follows the paragraph numbered as 73. Therefore, there are two paragraphs in Plaintiffs' Complaint numbered as 67 through 73. EBI's Answer follows the inconsistent numbering assigned to the paragraphs in the Plaintiffs' Complaint.

8

68. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 and, therefore, denies the same.

69. EBI denies the allegations contained in paragraph 69.

## COUNT XI
### Joint Venture/Joint Enterprise

70. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

71. EBI denies the allegations contained in paragraph 71.

## COUNT XII
### Alter Ego/Piercing Corporate Veil

72. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

73. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 and, therefore, denies the same.

74. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74 and, therefore, denies the same.

75. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 75 and, therefore, denies the same.

76. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76 and, therefore, denies the same.

74. [sic][2] EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74 and, therefore, denies the same.

---

[2] The numbering of the paragraphs in Plaintiffs' Complaint again is inconsistent and repeats beginning with the numbered paragraph following the paragraph numbered as paragraph 76. A paragraph numbered as 74 follows the paragraph numbered as 76. Thus, there are two paragraphs in Plaintiffs' Complaint numbered as 74 through 76. EBI's Answer follows the inconsistent numbering patterns used in Plaintiffs' Complaint.

## COUNT XIII
### Civil Conspiracy/Violation of Corporation Laws/Sham Transaction

75. EBI incorporates by reference its responses to all other paragraphs of Plaintiffs' Complaint as if set forth herein at length.

76. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76, subparts (a) through (f), and, therefore, denies the same.

77. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77 and, therefore, denies the same.

78. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 78 and, therefore, denies the same.

79. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 and, therefore, denies the same.

80. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 and, therefore, denies the same.

## COUNT XIV
### Damages

81. EBI denies the allegations contained in paragraph 81 of the Plaintiffs' Complaint insofar as they are directed to EBI and/or related to its products.  EBI denies that Plaintiffs are entitled to recover any damages whatsoever from EBI.  To the extent the allegations in paragraph 81 concern another Defendant, EBI is without knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, denies the same.

82. EBI denies the allegations contained in paragraph 82 of the Plaintiffs' Complaint insofar as they are directed to EBI and/or related to its products.  EBI denies that Plaintiff Stephen Coiner is entitled to recover any damages whatsoever from EBI.  To the extent the

10

allegations in paragraph 82 concern another Defendant, EBI is without knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, denies the same.

83. EBI denies the allegations contained in paragraph 83 of the Plaintiffs' Complaint insofar as they are directed to EBI and/or related to its products.  EBI denies that Plaintiffs are entitled to recover any damages whatsoever from EBI.  To the extent the allegations in paragraph 83 concern another Defendant, EBI is without knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, denies the same.

84. EBI expressly denies all assertions or allegations contained in the Plaintiffs' Complaint not expressly admitted herein.

85. EBI denies that any of its products or actions caused or contributed to Plaintiffs' alleged injuries and/or damages and that Plaintiff is entitled to any of the damages or relief sought against EBI.

**WHEREFORE**, EBI demands judgment in its favor against Plaintiffs along with such other legal and equitable relief as this court deems just and appropriate.

<u>**AFFIRMATIVE DEFENSES**</u>

<u>**FIRST DEFENSE**</u>

The Complaint fails to state a claim against EBI upon which relief may be granted.

<u>**SECOND DEFENSE**</u>

EBI avers that Plaintiffs' alleged damages, if any, were caused by the negligence, strict liability, or fault of third parties over whom EBI does not have control and for whom EBI is not responsible.

### THIRD DEFENSE

In the event EBI is found to have been at fault, which fault is specifically denied, any such fault or negligence was passive in comparison to the primary and active fault and/or negligence of persons, parties, or entities for which EBI is not responsible and may not be found legally liable therefor, thus barring any recovery against EBI.

### FOURTH DEFENSE

In the event that a third-party's negligence is found to have been the sole and proximate cause of any injury sustained by Plaintiffs, EBI is entitled to have any judgment against it reduced by a percentage of fault applicable that third-party's negligence.

### FIFTH DEFENSE

The EBI products at issue in Plaintiffs' Complaint are medical devices that may be used only by a licensed physician. At all pertinent times, the warnings, labels, and instructions which accompanied the EBI products at issue were sufficient to inform physicians of the FDA-approved uses of those products and the risks of use of those products and enable physicians to use these devices in an appropriate manner. Plaintiffs' recovery is, therefore, barred by the learned intermediary doctrine.

### SIXTH DEFENSE

EBI calls for strict proof that any of its products were involved in any act, omission or event alleged in Plaintiffs' Complaint.

### SEVENTH DEFENSE

There is no proximate causation or cause in fact between Plaintiffs' alleged damages and any alleged act, omission, breach of duty, or representation made by EBI.